Lionel P. BOISSIERE, Jr. and William B. Doyle, Jr., Appellants,

v.

NOVA CAPITAL, LLC, Appellee.

No. 05–02–01605–CV.

Court of Appeals of Texas, Dallas.

May 28, 2003.

David N. Kitner, Strasburger & Price, L.L.P., James K. Peden, III, Strasburger & Price, P.C., Dallas, for Appellants.

Michael K. Hurst, Godwin & Carlton, P.C., Julia F. Pendery, Goodwin Gruber, P.C., Dallas, for Appellee.

Before Justices MOSELEY, O'NEILL, and LAGARDE.[1]

Opinion by Justice MOSELEY.

Appellants Lionel P. Boissiere, Jr. and William B. Doyle, Jr., are residents of California and the only members of Doyle & Boissiere, LLC, (D & B), a Delaware limited liability company registered to do business in California. They assert the trial court erred in denying their special appearances and thus asserting personal jurisdiction over them in this suit alleging actual fraud, constructive fraud, negligent misrepresentation, breach of contract, and conspiracy.[2] We affirm the court's Order Denying Defendants William B. Doyle, Jr's. and Lionel P. Boissiere, Jr.'s Special Appearance.

## BACKGROUND

Jorge Bustamante, the founder of appellee, NOVA CAPITAL, LLC[3] (NOVA), developed a business plan for acquiring and reorganizing companies in the hotel window treatment business. He contacted potential investors by faxing them a summary or 'teaser' letter. D & B replied, contacting Bustamante from California for more information, and at his request executed a "Confidentiality Agreement." The agreement provided that D & B would not disclose the information supplied by NOVA to others, and that it would not engage in any investment banking transaction with the operating companies named in the agreement for 24 months from the date of the agreement.

Bustamante, Doyle, and Boissiere had several telephone discussions regarding Bustamante's proposal, and together the three of them visited one of the named companies in California. Neither Doyle nor Boissiere traveled to Texas in connection with this transaction. D & B did not

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

2. The suit also includes claims for an equitable accounting, conversion, tortious interference, fraudulent transfer and conspiracy to commit fraudulent transfer, breach of fiducia- ry duty, breach of duty of good faith and fair dealing, unjust enrichment and promissory estoppel.

3. Nova Capital, LLC is a Texas limited liability company.

pursue the proposed deal with NOVA, but an affiliate of D & B acquired 60% of the stock of Kojo Worldwide, the parent of one of the named companies, less than 24 months after the date of the Confidentiality Agreement. Nine months later and still less than 24 months after the date of the Confidentiality Agreement, Kojo Worldwide acquired the assets of Phoenix Draperies, another one of the companies named in the agreement.

NOVA brought suit in Texas against Doyle and Boissiere individually and D & B.[4] D & B filed an answer, but it did not file a special appearance. However, Doyle and Boissiere filed a special appearance claiming the trial court did not have personal jurisdiction over them. After a hearing the trial court denied Doyle and Boissiere's special appearance and this appeal followed.

## DUE PROCESS AND PERSONAL JURISDICTION

■ Texas courts may exercise jurisdiction over a nonresident defendant when (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–17.069 (Vernon 1997 & Supp.2003); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990). The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident who does business in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997). "Doing business" in Texas includes: (1) contracting by mail or otherwise with a Texas resident where either party is to perform the contract in whole or in part in the State; and (2) committing a tort in whole

or in part in Texas. *Id.* Because the language of the long-arm statute is broad, its requirements are met so long as the exercise of personal jurisdiction comports with the limitations of federal due process. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991).

■ A defendant's contacts with the forum state can give rise to either general or specific jurisdiction. *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996). NOVA is asserting specific personal jurisdiction over Doyle and Boissiere based on its allegations that they committed torts in the state of Texas and breached a contract performed in Texas. Specific jurisdiction arises if the defendant's alleged liability arises from or is related to its contacts within the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The defendant's purposeful conduct, not the unilateral activity of the plaintiff or others, must have caused the contact. *Id.* at 417, 104 S.Ct. 1868 (focus is on relationship among defendant, forum, and litigation). When a contract with a resident is involved, in evaluating whether the defendant established minimum contacts with the forum state, we are to focus on "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

## STANDARD OF REVIEW

■ NOVA, as plaintiff, bears the initial burden of pleading allegations sufficient to bring a nonresident defendant

---

4. NOVA also sued Kojo, Inc., Kojo Worldwide Corporation, Kojo Hospitality Systems, Koni Corporation, and Joe Robertson. NOVA later added DBF Management, D & B Funds, I, Koni Kim and Finova Capital as defendants.

within the provisions of the long-arm statute. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 807 (Tex.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003). A nonresident defendant challenging personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction. *CSR,* 925 S.W.2d at 596.

Whether a court has personal jurisdiction over a defendant is a question of law. *Coleman,* 83 S.W.3d at 805–06 (citing *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002)). But in resolving this question of law, a trial court must frequently resolve questions of fact. *Coleman,* 83 S.W.3d at 806 (citing *BMC Software,* 83 S.W.3d at 794). Appellate courts review the trial court's factual findings for legal and factual sufficiency and review the trial court's legal conclusions *de novo. BMC Software,* 83 S.W.3d at 794.

## SPECIFIC JURISDICTION BASED ON TORTS IN TEXAS

Turning to NOVA's pleading, Nova alleges that Doyle and Boissiere both committed the torts of fraud and negligent misrepresentation in Texas.[5] In the fraud count of its First Amended Petition NOVA alleges Doyle and Boissiere made material representations that they knew were false and that they made with the intent that NOVA rely upon them. Specifically, NOVA alleges that Doyle and Boissiere represented to NOVA that they would acquire and review NOVA's proprietary information regarding the proposed deal only for the purposes of determining whether and to what extent they would provide NOVA with financing, and further represented that they would not use NOVA's proprietary information to acquire

or attempt to acquire Kojo or Phoenix Draperies for 24 months following the receipt of the information. NOVA also alleges it relied on these representations and disclosed confidential and proprietary information to Doyle and Boissiere.

In the negligent misrepresentation count of Plaintiff's First Amended Petition NOVA alleges that Doyle and Boissiere represented to NOVA in the course of their business dealings in a transaction in which they had a pecuniary interest, that they were not intending to pursue nor had they initiated pursuit of acquisitions in Kojo and/or Phoenix Draperies in circumvention of NOVA's business plans. NOVA alleges that Doyle and Boissiere thereby provided NOVA with false information regarding material facts without exercising reasonable care, that NOVA justifiably relied on such information, and was induced to provide Doyle and Boissiere with its trade secret and proprietary information. NOVA alleges in both the fraud and negligent misrepresentation counts that its reliance on Dole's and Boissiere's misrepresentations caused it damage in that it lost the opportunity to complete the deal.

Although Doyle and Boissiere may have been acting on behalf of D & B, the general rule in Texas is that corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation. *See Shapolsky v. Brewton,* 56 S.W.3d 120, 133 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). NOVA alleges Doyle and Boissiere made the alleged misrepresentations in telephone calls from California to Bustamante in Texas, but reliance on the representations occurred in Texas. In a negligent misrepresentation case, even if the representation occurs outside the state of

---

**5.** NOVA alleges that all the defendants committed actual fraud, constructive fraud, conspiracy to commit fraud and breaches of fiduciary duty, and negligent misrepresentation.

Texas, a tort is committed in Texas if reliance thereon occurs in Texas. *Mem'l Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 648 (Tex.App.-Houston [14th Dist.] 1992, no writ).

Thus NOVA pled sufficient allegations to bring Doyle and Boissiere within reach of the long-arm statute. Therefore we review the record to determine whether Doyle and Boissiere have negated all bases of jurisdiction. *See Shapolsky*, 56 S.W.3d at 133.

■ The trial court did not issue findings of fact and conclusions of law concerning its special appearance ruling. Thus, we imply all findings of fact necessary to support the order that are supported by the evidence. *BMC Software*, 83 S.W.3d at 795. When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *Id.* For legal sufficiency points, if there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Id.* A finding of fact is to be set aside on the basis of factual insufficiency only when the finding is so against the overwhelming weight of the evidence that it is manifestly erroneous or unjust. *Shapolsky*, 56 S.W.3d at 128.

■ When reaching a decision to exercise or decline jurisdiction based on the defendant's alleged commission of a tort, the trial court should rely only upon the necessary jurisdictional facts and should not reach the merits of the case. *Ring Power Sys. v. Intern. de Comercio Y Consultoria*, 39 S.W.3d 350, 353 (Tex.App.-Houston [14th Dist.] 2001, no pet.). However, the specially appearing defendant may meet his jurisdictional burden by proving the nonexistence of a jurisdictional fact, even if such proof also disproves the existence of a necessary element of the plaintiff's cause of action. *French v. Glorioso*, 94 S.W.3d 739, 746–47 (Tex.App.-San Antonio 2002, no pet.).

The record for the special appearance hearing included affidavits and deposition testimony of Doyle and Boissiere, the Confidentiality Agreement, NOVA's business plan, and live testimony from Bustamante. The record shows that Doyle and Boissiere claim that they never made any representations to Bustamante. Bustamante controverted these claims, testifying that he had about eight telephone calls with Doyle and Boissiere and that both Doyle and Boissiere assured him that they would receive the names of the operating companies and details of NOVA's business plan in exchange for signing an agreement not to compete with him or circumvent him. Bustamante testified further that he received information from Boissiere that Boissiere and Doyle would keep the information confidential and would not circumvent him or compete against him. The record shows that Bustamante did not release NOVA's business plan until he had received a signed Confidentiality Agreement.[6] The parties disagree as to whether the Confidentiality Agreement prohibits D & B from competing with NOVA in acquiring any of the operating companies, but Bustamante contends that Doyle and Boissiere knew he was relying on the fact that

---

**6.** The Confidentiality Agreement provided that information was being furnished in connection with D & B's consideration of the "acquisition, or financing or restructuring of the Company, and the Operating Companies, and that the information was 'secret' and 'confidential' and no portion of it shall be disclosed to others." The agreement further provided that: "[T]he Undersigned and/or its Principals directly or indirectly hereby agree not to solicit, engage or do any investment banking transaction with The Operating companies for a period of 24 months from this date."

the agreement did prohibit such competition and represented to him that they would not circumvent him. In their deposition testimony Doyle and Boissiere admitted that they had not heard of any of the operating companies until Bustamante identified them. There was evidence that Doyle and Boissiere had several telephone calls with Bustamante while he was in Texas, and that an affiliate of D & B did acquire the parent of one of the operating companies, and that parent then acquired another one of the operating companies, all without NOVA's participation.

Regardless of what a jury may decide upon full factual development in a proper forum, we hold there is legally and factually sufficient evidence to support the court's implicit finding that Doyle and Boissiere failed to negate specific personal jurisdiction over them. *See id.* at 747. Doyle and Boissiere have not shown that the court's finding of jurisdiction was "so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust." *See Shapolsky,* 56 S.W.3d at 128. Thus we conclude the Texas long-arm statute by its terms authorizes the exercise of jurisdiction over Doyle and Boissiere.

## DUE PROCESS AND PERSONAL JURISDICTION

■ We must now determine whether the exercise of jurisdiction over Doyle and Boissiere is consistent with the requirements of due process. *See Schlobohm,* 784 S.W.2d at 357. The due process test requires that (1) the nonresident defendant has purposefully established minimum contacts with Texas and, if so, (2) the exercise of jurisdiction comports with "notions of fair play and substantial justice." *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174.

## MINIMUM CONTACTS

■ The "minimum contacts" analysis requires the court to determine whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its law. *See BMC Software,* 83 S.W.3d at 795; *Guardian Royal,* 815 S.W.2d at 226. The essential goal of the "purposeful availment" requirement is to protect a nonresident defendant from being haled into a jurisdiction based solely on random, fortuitous, or attenuated contacts. *Id.* Instead, a nonresident defendant's activity, whether it consists of direct acts within the forum or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being haled into court there. *Schlobohm,* 784 S.W.2d at 357. The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant that create a substantial connection with the forum state. *Guardian Royal,* 815 S.W.2d at 226. It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis. *See Mem'l Hosp. Sys.,* 835 S.W.2d at 650.

■ In determining whether there is a substantial connection between the nonresident defendant and the forum state, "foreseeability" should be considered. *Id.* In *Memorial Hospital System,* a Texas hospital called an out of state insurance agent to ask whether a patient was covered by insurance. The agent incorrectly assured the hospital that the patient was covered. The hospital relied on this information and treated the patient for two weeks. The lack of insurance coverage was discovered and the hospital sued the out of state agent in Texas alleging negligent misrepresentation. The defendant's only contact with Texas was one phone call he received from the Texas hospital. The court held

that the defendant was not denied due process by being subjected to suit in Texas, because he had committed a tort with a foreseeable economic injury in Texas. It did not matter that there was only one phone call and that the defendant had not initiated the phone call. What mattered was whether the contacts suggested the nonresident defendant had purposely availed himself of the benefits of the forum state. *Id.* at 651.

 Here there is legally and factually sufficient evidence that Doyle and Boissiere knew they were dealing with a Texas resident. They contacted him in Texas for more information and assured him they would not circumvent him in dealing with the target companies. The actions Bustamante complains of are the actions that connect these defendants to Texas, and the possibility that they would end up in court in Texas was foreseeable.

Doyle and Boissiere cite *Laykin v. McFall,* 830 S.W.2d 266, 269 (Tex.App.-Amarillo 1992, orig. proceeding) for the proposition that a California defendant's contracting with a Texas resident for the sale of a ring was not conduct by which that defendant had purposefully availed himself of the privilege of conducting activities within Texas and invoking the benefits and protection of its laws. *Laykin* involved a much more casual connection with Texas than the facts alleged here. There a Texas resident solicited a California resident in a transaction that would not require the Texan's continued involvement other than to receive the sale proceeds. Although NOVA initially contacted Doyle and Boissiere, there is evidence that they in turn pursued a proposed transaction with NOVA. Relying on their representations that they would not "go around him," Bustamante provided them with all of his extensive research and the means of taking advantage of this business opportunity.

This business plan contemplated NOVA's and Bustamante's continued involvement with the company created pursuant to the plan. Regardless of whether the plan proposed by Bustamante was ultimately adopted by defendants or their affiliates, their dealings with him did represent a more purposeful availment of the privilege of conducting activities in Texas than was present in *Laykin,* such that Boissiere and Doyle could reasonably anticipate being sued in Texas in connection with those activities.

Similarly distinguishable is this Court's decision in *City of Riverview v. American Factors, Inc.,* 77 S.W.3d 855, 858 (Tex. App.-Dallas 2002, no pet.), in which a company made a single phone call to Texas in response to a notice from the Texas plaintiff regarding a business relationship between that plaintiff and another party. The nonresident defendant had not sought to involve itself in the business relationship between the Texas plaintiff and the nonresident defendant and did not purposely direct any activities toward Texas.

## TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

 Under the second prong of the due process analysis, we evaluate the contacts in light of other factors underlying traditional notions of fair play and substantial justice. *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174. In evaluating whether the assertion of jurisdiction comports with fair play and substantial justice we consider the following factors: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of

the several states in furthering fundamental substantive social policies. *Guardian Royal,* 815 S.W.2d at 228. Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Id.* at 231.

The first factor, the burden on Doyle and Boissiere, does not weigh heavily in their favor. Distance alone is ordinarily insufficient to defeat jurisdiction because "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Id.* The defendants are the only two members of D & B, which is already before the Texas court, so their presence as individuals may already be necessary. The second and third factors weigh in favor of the Texas court. Texas courts have an interest in adjudicating claims of Texas residents, and Texas is a convenient forum for the plaintiff. Moreover, the alleged torts occurred in Texas, and the remainder of the case arising out of these transactions is in Texas. The fourth and fifth factors concern the interstate judicial system's interest in efficiency and furthering social policies. Efficiency considerations weigh heavily in favor of Texas because the remainder of the case and the other defendants have appeared here and any social policies may certainly be implemented by Texas courts as well as by those in California.

Accordingly, we hold that the individual defendants Doyle and Boissiere have not negated every possible basis of personal jurisdiction herein and that they have sufficient minimum contacts with the State of Texas such that to subject them to personal jurisdiction as a result of their actions in Texas does not offend considerations of due process or traditional notions of fair play. Moreover, there is more than a scintilla of evidence to support the trial court's implicit finding of jurisdiction, and such finding is not manifestly erroneous or unjust.

Because Doyle and Boissiere have not negated specific personal jurisdiction based on torts committed in Texas, we need not reach the question of jurisdiction based on breach of contract.

We affirm the trial court's Order Denying Defendants William B. Doyle, Jr. and Lionel P. Boissiere, Jr.'s Special Appearance.