IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0016
════════════
 
Michiana Easy Livin’ Country, Inc., d/b/a Michiana R.V., Petitioner,
 
v.
 
James G. Holten, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the First District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 6, 
2005
 
 
            
Justice Brister delivered the opinion of the Court, in which Chief Justice Jefferson, Justice Hecht, Justice Owen, and Justice Green joined.
 
Justice Medina filed a dissenting 
opinion, in which Justice O’Neill 
joined.
 
Justice Wainwright and Justice Johnson did not participate in 
the decision.
 
James Holten decided to buy a $64,000 Coachmen recreational 
vehicle sight unseen. Eschewing every RV dealer in Texas, he sought a lower 
price from Michiana Easy Livin’ Country, Inc., an outlet store that only did business 
in Indiana. Holten called Michiana in Indiana, sent payment to Indiana, paid for 
delivery from Indiana, and agreed to resolve every dispute in Indiana. But when 
a dispute actually arose, he filed suit in Texas.
The trial 
court and court of appeals denied Michiana’s special 
appearance. Because of a conflict in the decisions of the courts of appeals,[1] 
we have jurisdiction to review this conclusion.[2] 
Finding Michiana does not have minimum contacts with 
Texas, we reverse.  
I
A. Petition and Brief
We first 
address two questions of error preservation.
First, Holten argues that Michiana cannot 
assert a minimum-contacts challenge because it was raised for the first time in 
Michiana’s brief on the merits rather than in its 
petition for review.[3] 
In its petition for review, Michiana stated the issue 
presented as follows: 
 
Whether 
factually and legally sufficient evidence exists in the Clerk’s Record to 
support the implied finding by the trial court that Michiana committed a tort in Texas C 
the only basis for personal jurisdiction over Michiana 
by Texas courts.
 
Both 
the opinion below and the petition for review here list undisputed facts showing 
that Michiana had no contact with Texas or Texans 
except for the alleged tort. Michiana’s petition is 
correct C 
the sole ground on which the court of appeals based jurisdiction was the 
commission of a tort in Texas.[4] 
The argument that this conclusion was incorrect necessarily included the 
subsidiary argument detailed in Michiana’s brief C 
that without that ground, jurisdiction did not exist. This is all the rules 
require.[5]
B. The Record in Pretrial Hearings
Second, 
the appellate record contains no reporter’s record of the special appearance 
hearing. Though candidly conceding that no oral testimony or new exhibits were 
presented at that hearing, Holten nevertheless argues 
we must presume evidence was presented that supports the trial court’s 
order.
It 
is difficult to state a bright-line rule regarding unrecorded pretrial 
proceedings, as they come in so many shapes and sizes. Many pretrial “hearings” 
take place entirely on paper, while others involve a personal appearance in 
court.[6] 
In some the parties must file all evidence with the clerk;[7] 
in others they must present it in open court;[8] 
in most the manner of presentation is discretionary;[9] 
in at least one the answer is unclear.[10]
What 
is clear is that a reporter’s record is required only if evidence is introduced 
in open court; for nonevidentiary hearings, it is 
superfluous.[11] 
If all the evidence is filed with the clerk and only arguments by counsel are 
presented in open court, the appeal should be decided on the clerk’s record 
alone.[12] 

The 
difficulty of course is that the absence of a reporter’s record does not tell us 
whether a pretrial hearing was nonevidentiary, or 
evidentiary but not preserved. Presuming them all the former unfairly penalizes 
a party that presents evidence in open court that the other party does not 
bother to preserve. But presuming them all the latter would require every 
hearing to be recorded C 
whether evidentiary (to show what was presented) or not (to show nothing was). 
Besides being wasteful, this would frustrate the intent of our appellate rule 
requiring a reporter’s record only “if necessary to the appeal.”[13]
For 
some years now the trend has been away from full evidentiary hearings in open 
court for most pretrial matters. While we have generally encouraged oral 
hearings when arguments may be helpful,[14] 
both the Legislature and this Court have discouraged oral presentation of 
testimony and evidence when they can be fairly submitted in writing.[15] 
Counsel can almost always direct the trial court’s attention to pertinent 
deposition excerpts, discovery responses, or affidavits in less time than it 
takes to recreate them in open court. Presuming that most pretrial proceedings 
are evidentiary would not only discourage this trend, but would encumber 
thousands of routine hearings by requiring formal proof that no proof was 
offered. 
Accordingly, 
we have in the past presumed that pretrial hearings are nonevidentiary absent a specific indication or assertion to 
the contrary.[16] 
If the proceeding’s nature, the trial court’s order, the party’s briefs, or 
other indications show that an evidentiary hearing took place in open court, 
then a complaining party must present a record of that hearing to establish 
harmful error.[17] 
But otherwise, appellate courts should presume that pretrial hearings are nonevidentiary, and that the trial court considered only the 
evidence filed with the clerk. 
It 
is true that a dozen years ago in Piotrowski 
v. Minns we stated: “[a] litigant who fails to 
request that the reporter record pretrial proceedings risks waiver of any 
complaint with respect to error occurring during those proceedings.”[18] 
But the appellant there conceded that the special appearance hearing was 
evidentiary.[19] 
Moreover, since that time the rules have changed so that court reporters no 
longer attend court and make a record only “when requested” but now must do so 
“unless excused by agreement of the parties.”[20] 
The former rule implied a lack of diligence when the losing party requested no 
record;[21] 
the current rule implies an agreement that no record was made because none was 
needed.
Either 
party, of course, may allege that a hearing was evidentiary, but that allegation 
must be specific. Merely asserting that the trial court “considered evidence at 
the hearing” is not enough C 
trial courts do that when a hearing is conducted entirely on paper, or based 
solely on affidavits and exhibits filed beforehand. Instead, there must be a 
specific indication that exhibits or testimony was presented in open court 
beyond that filed with the clerk. As the rules of professional conduct 
prohibit assertions that a hearing was evidentiary when it was not,[22] 
and as events in open court can usually be confirmed by many witnesses, there is 
no reason to expect that such assertions will be lightly fabricated.
Our 
appellate rules are designed to resolve appeals on the merits, and we must 
interpret and apply them whenever possible to achieve that aim.[23] 
Accordingly, we decline to presume the special appearance hearing here was 
evidentiary when everyone concedes it was not. 
II
A. Background
As 
its name invertedly suggests, Michiana is located in Indiana a few miles from the Michigan 
border. It is a separate legal entity from the manufacturer or any other dealers 
of Coachmen RVs. It has neither employees nor property in Texas, and is not 
authorized to do business here. It does not advertise in Texas or on the 
Internet, and thus did not solicit business from Holten or anyone else in Texas.
The 
sale at issue here was initiated entirely by Holten. 
Seeking a cheaper price than he could get from any of Coachmen’s many dealers in 
Texas, Holten called the Coachmen factory. He was 
informed that Coachmen did not sell directly from the factory, but that a lower 
price could be obtained from Michiana, a “factory 
outlet.” Holten obtained Michiana’s number from the factory and placed the call that 
initiated the transaction here. 
The 
RV was constructed and equipped outside Texas. It was paid for outside Texas. It 
was shipped to Texas at Holten’s request and entirely 
at his expense. 
The 
question presented is whether suit can be brought in Texas based on a 
nonresident’s alleged misrepresentations in a telephone call with a Texas 
resident. The courts of appeals are split on this question of specific 
jurisdiction[24] 
C 
some holding it would violate constitutional standards,[25] 
and others (including the lower court here) that it would not.[26]
B. Purposeful Availment 
For 
half a century, the touchstone of jurisdictional due process has been 
“purposeful availment.” Since Hanson v. Denckla, “it is essential in each case that there be 
some act by which the defendant purposefully avails itself of the 
privilege of conducting activities within the forum State, thus invoking the 
benefits and protections of its laws.”[27] 

Three 
aspects of this requirement are relevant here. First, it is only the defendant’s 
contacts with the forum that count: purposeful availment “ensures that a defendant will not be haled into a 
jurisdiction solely as a result of . . . the ‘unilateral activity of another 
party or a third person.’”[28] 

Second, 
the acts relied on must be “purposeful” rather than fortuitous.[29] 
Sellers who “reach out beyond one state and create continuing relationships and 
obligations with citizens of another state” are subject to the jurisdiction of 
the latter in suits based on their activities.[30] 
By contrast, a defendant will not be haled into a jurisdiction solely based on 
contacts that are “random, isolated, or fortuitous.”[31]
Third, 
a defendant must seek some benefit, advantage, or profit by “availing” itself of 
the jurisdiction.[32] 
Jurisdiction is premised on notions of implied consent C 
that by invoking the benefits and protections of a forum’s laws, a nonresident 
consents to suit there.[33] 
By contrast, a nonresident may purposefully avoid a particular jurisdiction by 
structuring its transactions so as neither to profit from the forum’s laws nor 
be subject to its jurisdiction.[34] 

C. Stream of Commerce
In 
the context of product sales, a nonresident need not have offices or employees 
in a forum state in order to meet the purposeful availment test. In International Shoe Co. v. 
Washington, a nonresident corporation had neither offices nor inventory in 
the state of Washington, but did have a dozen resident salesmen on commission 
who exhibited samples, solicited orders, and transmitted them to other states 
for shipment to resident consumers.[35] 
The operation of a sales and distribution network rendered the nonresident 
subject to the state’s jurisdiction.[36]
Thus, 
a nonresident that directs marketing efforts to Texas in the hope of soliciting 
sales is subject to suit here in disputes arising from that business. 
Advertising in telephone directories in Texas cities,[37] 
operating an office for sales information and support,[38] 
and certain activities over the Internet[39] 
all meet this standard.
It 
is less clear whether a nonresident “purposefully avails” itself of a forum when 
it benefits from a major market without doing any of the marketing. Almost 
twenty years ago, four justices of the United States Supreme Court held that a 
nonresident’s mere awareness that thousands of its products were ultimately 
being sold in the forum state established purposeful availment;[40] 
four others held that “additional conduct” was required (e.g., designing the 
product for or advertising it in the forum State);[41] 
the ninth held that, assuming “additional conduct” was required, regular sales 
resulting in thousands of products reaching the forum state over many years 
would suffice “[i]n most circumstances.”[42]
Since 
that time, we have noted that our cases appear to follow the “additional 
conduct” standard.[43] 
Thus, for example, we have held that shipping hundreds of tons of raw asbestos 
to Houston was insufficient to establish jurisdiction absent evidence that a 
nonresident participated in the decision to send it there.[44]
Whichever 
of these standards is ultimately correct, Michiana’s 
conduct meets none of them. Michiana did not place 
large numbers of RVs in a “stream of commerce” flowing to Texas; as we have 
noted before, stream-of-commerce jurisdiction requires a stream, not a 
dribble.[45] 
Nor is there any evidence of any “additional conduct” C 
Michiana did not design, advertise, or distribute RVs 
in Texas. Exercising jurisdiction here would go far beyond anything we have 
approved in other commercial cases.
D. Single Sales
The 
court of appeals relied on several cases by intermediate courts in Texas holding 
that a single contact with the state is sufficient to establish jurisdiction.[46] 
But the United States Supreme Court has emphatically answered the question 
whether a single contract with a Texas resident can automatically establish 
jurisdiction C 
“the answer clearly is that it cannot.”[47] 

Both 
the United States Supreme Court and this Court have found no purposeful availment in cases involving isolated sales solicited by 
consumers who proposed to use the product in a state where the defendant did no 
business. In World‑Wide Volkswagen Corp. v. Woodson, the Supreme Court 
held that dealers who sold a car in New York could not be sued in Oklahoma just 
because the buyers were involved in a collision there:
 
[W]e find 
in the record before us a total absence of those affiliating circumstances that 
are a necessary predicate to any exercise of state‑court jurisdiction. 
Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and 
perform no services there. They avail themselves of none of the privileges and 
benefits of Oklahoma law. They solicit no business there either through 
salespersons or through advertising reasonably calculated to reach the State. 
Nor does the record show that they regularly sell cars at wholesale or retail to 
Oklahoma customers or residents or that they indirectly, through others, serve 
or seek to serve the Oklahoma market. In short, respondents seek to base 
jurisdiction on one, isolated occurrence and whatever inferences can be drawn 
therefrom: the fortuitous circumstance that a single 
Audi automobile, sold in New York to New York residents, happened to suffer an 
accident while passing through Oklahoma.[48]
 
The 
facts here are not the same as those in Woodson, but do not differ in any 
material respect. Michiana knew Holten would take his RV to Texas, while it was merely 
foreseeable to the defendant in Woodson that its buyer would drive 
his Audi to Oklahoma.[49] 
But in either case the choice was entirely that of the purchaser; the seller had 
no say in the matter. Under Holten’s theory, Michiana could be sued in any state or country from which he 
chose to place his call and take delivery. But as the Supreme Court stated, 
“unilateral activity . . . cannot satisfy the requirement of contact with the 
forum State.”[50]
This 
Court addressed the same question in 1996 in CMMC v. Salinas.[51] 
In that case, a French manufacturer had made no effort to market its winepress 
equipment in Texas, had made only one other sale in Texas, and did not initiate 
the sale at issue to a Texas buyer.[52] 
We held that the Due Process Clause prohibited specific jurisdiction of a tort 
suit in Texas based on injuries resulting from alleged defects.[53] 
As Michiana’s contacts here are certainly no more and 
arguably somewhat less than those in CMMC, the result must be the same, 
as the Due Process Clause has not changed in the interim.
It 
is true that in some circumstances a single contract may meet the 
purposeful-availment standard, but not when it 
involves a single contact taking place outside the forum state. A 
long-term franchise agreement may establish minimum contacts because, though it 
stems from a single contract, it involves many contacts over a long period of 
time.[54] 
Similarly, a life-insurance policy may stem from a single contract, but 
necessarily involves a series of contacts until death does the parties part.[55]
Certainly 
a nonresident corporation ought to be subject to suit in any jurisdiction where 
it “enjoys the benefits and protection of the laws of that state.”[56] 
Here, it is hard to imagine what possible benefits and protection Michiana enjoyed from Texas law. Holten paid for the RV in advance, and could not have 
planned on taking it to Indiana regularly for service. Everything Michiana wanted out of the contract it had in hand. Indeed, 
it is hard to imagine how Michiana would have 
conducted its activities any differently if Texas had no law at all.
Clearly, 
Michiana anticipated some profit from this single 
sale, at least until the litigation started. But “financial benefits accruing to 
the defendant from a collateral relation to the forum State will not support 
jurisdiction if they do not stem from a constitutionally cognizable contact with 
that State.”[57] 
We find none here.
III 
The 
court of appeals affirmed on the basis of two contacts between Michiana and Texas: (1) misrepresentations Michiana allegedly made in response to a phone call from 
Holten, and (2) Michiana’s 
arrangements with a shipper to deliver the RV to Holten for use in Texas. Neither is sufficient.
A. Shipping to Texas
The 
second ground is easily disposable. Delivery in Texas was at Holten’s sole request and sole expense. If a seller of 
chattels is subject to suit wherever a customer requests delivery, then the 
chattel has become its agent for service of process C 
a conclusion the United States Supreme Court has expressly rejected.[58]
We 
too rejected this argument in CMMC, in which we stated: “The sole 
question in this case is whether the Fourteenth Amendment permits a state court 
to take personal jurisdiction over a foreign manufacturer merely because it knew 
its allegedly defective product would be shipped to that state. We answer 
no, and thus reverse . . . .”[59] 
Accordingly, we must do the same here.
B. Committing a Tort “in” Texas
The 
court of appeals relied most heavily on the first ground C 
Holten’s allegation that Michiana committed a tort in Texas. 
Allegations 
that a tort was committed in Texas satisfy the Texas Long-Arm Statute,[60] 
but not necessarily the U.S. Constitution; the broad language of the former 
extends only as far as the latter will permit.[61] 
Thus, for example, the plaintiffs in both Woodson and CMMC alleged 
torts, and the defendants surely foresaw that defective products could harm 
local buyers C 
but in neither case was that enough to establish jurisdiction.[62] 

The 
court below joined many of its sister courts in stating the following as a rule 
of jurisdiction: “If a tortfeasor knows that the brunt 
of the injury will be felt by a particular resident in the forum state, he must 
reasonably anticipate being haled into court there to answer for his actions.”[63] 
But neither this Court nor the United States Supreme Court has ever said so. 

To 
the contrary, twenty years ago the United States Supreme Court wrote: “Although 
it has been argued that foreseeability of causing 
injury in another State should be sufficient to establish such contacts there 
when policy considerations so require, the Court has consistently held that this 
kind of foreseeability is not a ‘sufficient benchmark’ 
for exercising personal jurisdiction.”[64] 
This Court too has expressly rejected jurisdiction “based solely upon the 
effects or consequences of an alleged conspiracy” in the forum state.[65] 
Instead, it is “the defendant's conduct and connection with the forum” that are 
critical.[66]
It 
is true that on one occasion the United States Supreme Court found specific 
jurisdiction based on alleged wrongdoing intentionally directed at a forum 
resident. In Calder v. Jones, a reporter and editor collaborated on an 
allegedly defamatory article, but they did so knowing the article was for their 
employer, the National Enquirer, which sold more than 600,000 copies in 
the forum state every week.[67] 
Whether or not a jury found the article defamatory, there was no question the 
defendant’s article constituted a substantial “presence” in the state.
Texas 
courts that base jurisdiction on torts committed during the receipt of an 
out-of-state phone call apparently assume that Calder would have come out 
the same way if the defamation had occurred in a single unsolicited phone call a 
nonresident answered from a single private individual in the forum state. But if 
“the defendant’s conduct and connection with the forum” must play a critical 
role, the two cases cannot be the same.
A 
companion case decided by the same Court on the same day as Calder shows 
that the important factor was the extent of the defendant’s activities, not 
merely the residence of the victim. In Keeton v. Hustler Magazine, Inc., 
the victim of another allegedly defamatory article sued not in the state where 
she lived, but in a different state with a longer statute of limitations.[68] 
Noting that the defendant had sold more than 10,000 copies of its magazine every 
month in the forum state, the Supreme Court held that “it must reasonably 
anticipate being haled into court there.”[69]
Our 
dissenting colleagues cite no other authority that a single conversation with a 
private citizen constitutes purposeful availment of 
any jurisdiction in which that citizen happens to live. While torts were alleged 
in some of the cases cited in the dissent, the defendant’s conduct in each case 
was much more extensive and was aimed at getting extensive business in or from 
the forum state.[70] 
Exercising jurisdiction here would go far beyond anything we have approved in 
other tort cases.
C. The Consequences
Several 
problems arise if jurisdiction turns not on a defendant’s contacts, but on where 
it “directed a tort.” First, it shifts a court’s focus from the “relationship 
among the defendant, the forum, and the litigation”[71] 
to the relationship among the “plaintiff, the forum . . . and the 
litigation.”[72] 
The place where a plaintiff relies on fraud may determine the choice of law,[73] 
but choice‑of‑law analysis considers all parties, local courts, legal policies, 
interested states, and the interstate and international systems.[74] 
By contrast, minimum‑contacts analysis focuses solely on the actions and 
reasonable expectations of the defendant.[75] 

Second, 
directed-a-tort jurisdiction confuses the roles of judge and jury by equating 
the jurisdictional inquiry with the underlying merits. If purposeful availment depends on whether a tort was directed toward 
Texas, then a nonresident may defeat jurisdiction by proving there was no 
tort.[76] 
Personal jurisdiction is a question of law for the court, even if it requires 
resolving questions of fact.[77] 
But what if a judge and jury could disagree? May a trial judge effectively grant 
summary judgment in a local jurisdiction by deciding contested liability facts 
in favor of the defendant? And if a jury absolves a defendant of tort liability, 
is the judgment void because the court never had jurisdiction of the defendant 
in the first place?[78]
Business 
contacts are generally a matter of physical fact, while tort liability 
(especially in misrepresentation cases) turns on what the parties thought, said, 
or intended. Far better that judges should limit their jurisdictional decisions 
to the former rather than involving themselves in trying the latter.
Third, 
in cases dealing with commerce, a plaintiff often has the option to sue in 
either contract or tort. Here, for example, Holten 
alleged tort, contract, and statutory claims, as Texas law often allows a 
plaintiff to do.[79] 
If directing a tort at Texas is enough, then personal jurisdiction arises when 
plaintiffs allege a tort, but not when they allege breach of contract. Thus, the 
defendant’s purposeful availment depends on the 
form of claim selected by the plaintiff.
Fourth, 
changes in technology have made reliance on phone calls obsolete as proof of 
purposeful availment. While the ubiquity of “caller 
ID” may allow nonresidents to know a caller’s telephone number, that number no 
longer necessarily indicates anything about the caller’s location. If 
jurisdiction can be based on phone conversations “directed at” a forum, how does 
a defendant avail itself of any jurisdiction when it can never know where the 
other party has forwarded calls or traveled with a mobile phone?
In 
their dissenting opinion, our colleagues remind us seven times that Michiana did not deny Holten’s 
fraud allegations. Of course, Michiana did deny his 
allegations in its answer, but rightly focused its jurisdictional affidavits on 
lack of contacts rather than lack of culpability. Jurisdiction 
cannot turn on whether a defendant denies wrongdoing C 
as virtually all will. Nor can it turn on whether a plaintiff merely alleges 
wrongdoing C 
again as virtually all will. If committing a tort establishes jurisdiction, our 
colleagues will have to decide who is correct C 
and then the Texas jurisdictional rule will be: guilty nonresidents can be sued 
here, innocent ones cannot. The dissenting opinion shows little doubt on that 
score;[80] 
but if we address jurisdictional questions in this spirit, nonresidents will 
avoid not just our courts but our state and all its residents as well. 
For 
the reasons stated above, we disapprove of those opinions holding that (1) 
specific jurisdiction is necessarily established by allegations or evidence that 
a nonresident committed a tort in a telephone call from a Texas number,[81] 
or that (2) specific jurisdiction turns on whether a defendant’s contacts were 
tortious rather than the contacts themselves.[82] 

IV
Finally, 
the one-page contract signed by the parties provided that any litigation between 
them would occur in Indiana:
 
CONTROLLING 
LAW AND PLACE OF SUIT. The law of the State, in which I [Holten] sign this contract, is the law which is to be used 
in interpreting the terms of the contract. You [Michiana] and I agree that if any dispute between us is 
submitted to a court for resolution, such legal proceeding or suit shall take 
place in the county in which your principle [sic.] offices are located.
 
Michiana asserted this clause as a separate ground for 
granting its special appearance, and moved to dismiss on that basis, but has not 
sought mandamus to enforce it. Instead, Michiana 
asserts the clause as additional proof that it never purposefully availed itself 
of the benefits and protections of Texas law.
We 
agree with the court of appeals that a forum-selection clause designating 
Indiana does not necessarily indicate Michiana had no 
minimum contacts anywhere else.[83] 
Generally, a forum-selection clause operates as consent to jurisdiction in one 
forum, not proof that the Constitution would allow no other.[84] 

But 
this Court has held that deletion of a forum-selection clause designating a 
foreign jurisdiction is some evidence that local jurisdiction was 
anticipated.[85] By the same token, 
insertion of a clause designating a foreign forum suggests that no local availment was intended. The Supreme Court has held 
that choice‑of‑law provisions should not be ignored in considering whether a 
defendant has “purposefully invoked the benefits and protections of a State's 
laws.”[86] 
For the same reasons, the forum-selection clause here cannot be ignored 
either.
Holten asserts three arguments in response. First, he 
asserts the forum-selection clause was waived because Michiana raised it shortly before the special appearance 
hearing, and at the hearing “agreed the clause was inapplicable.” Although the 
special appearance was not decided until two years after filing, the record 
before us reflects little activity other than the special appearance, and 
nothing to suggest any prejudice to Holten from the 
delay.[87] 
As there was no reporter’s record of the hearing, the alleged concession by 
counsel was not only unrecorded but unenforceable.[88] 

Second, 
Holten argues the forum-selection clause is limited to 
disputes regarding “interpreting the terms of the contract,” a phrase appearing 
in the same section but a preceding sentence. But the title of the paragraph 
shows that two different topics were addressed in it, and the forum-selection 
clause itself refers only to “any dispute between us” (emphasis added). 
The parties were not required to put these two sentences in two different 
paragraphs to show that one did not modify the other.
Third, 
Holten argues it was within the trial court’s 
discretion to refuse to enforce this clause. But enforcement of a 
forum‑selection clause is mandatory absent a showing that “enforcement would be 
unreasonable and unjust, or that the clause was invalid due to fraud or 
overreaching.”[89] 
Holten does not assert that the clause itself was 
fraudulently induced, and presented no evidence showing why enforcement would be 
unreasonable or unjust. Accordingly, he should be held to it.
* 
* *
The 
Due Process Clause “ensure[s] that the States, through their courts, do not 
reach out beyond the limits imposed on them by their status as coequal 
sovereigns in a federal system.”[90] 
In the sixty years since International Shoe, the United States Supreme 
Court has decided only about a dozen minimum-contacts cases, but two of them 
reversed Texas courts: once for reaching too far,[91] 
and once for preventing a sister state from reaching far enough.[92] 
Ours is certainly a large state, but we must recognize our own limits and those 
of our coequal sovereigns.
The 
Due Process Clause of the United States Constitution forbids jurisdiction 
over:
$                
a nonresident automobile dealer whose only 
contact with the forum was a customer's decision to drive there;[93] 

$                
a nonresident father whose only contact with the 
forum was his ex-wife’s decision to move there;[94] 
and 
$                
a nonresident trustee whose only contact with the 
forum was the settlor's exercise of a power of 
appointment there.[95]
Because 
Michiana’s only contact with Texas was Holten’s decision to place his order from there, we reverse 
the court of appeals' judgment and render judgment dismissing the claims against 
Michiana for want of jurisdiction.

 
Scott 
Brister
Justice
 
OPINION 
DELIVERED: May 27, 2005




[1] See infra notes 
25-26.

[2] Tex. Gov’t Code ' 22.001(a)(2), ' 22.225(c).

[3] See Tex. 
R. App. P. 55.2 (“The petitioner’s brief on the merits must be confined 
to the issues or points stated in the petition for review . . . 
.”).

[4] 127 S.W.3d 89, 96-99.

[5] Tex. R. App. 
P. 55.2(f) (providing that issues presented “will be treated as covering 
every subsidiary question that is fairly included”).

[6] Martin v. Martin, Martin & Richards, Inc., 
989 S.W.2d 357, 359 (Tex. 1998) (per curiam) (“Unless 
required by the express language or the context of the particular rule, the term 
‘hearing’ does not necessarily contemplate either a personal appearance before 
the court or an oral presentation to the court.”).

[7] See, e.g., Tex. R. Civ. 
P. 87(3)(b) (motion to transfer venue); id. 166a(c) (summary 
judgment).

[8] See, e.g., Millwrights Local Union No. 2484 
v. Rust Eng’g Co., 433 S.W.2d 683, 687 (Tex. 1968) 
(holding temporary injunction may not be proved by affidavit unless parties 
agree otherwise); see also Union Carbide Corp. v. Moye, 798 S.W.2d 792, 794 (Tex. 1990) (Hecht, J., 
concurring) (arguing trial court is “obliged . . . to hear live testimony when 
it is necessary to resolve issues that cannot be determined on a written 
record”).

[9] See, e.g., Tex. R. Civ. 
P. 120a(3) (special appearance); 193.4(a) (privilege objections); 199.6 
(deposition objections); compare Henry Schein, Inc. 
v. Stromboe, 102 S.W.3d 675, 702 (Tex. 2003) 
(noting five‑day certification hearing included twelve bound volumes of exhibits 
and six volumes of testimony) with Snyder Communications, L.P. v. Magana, 
142 S.W.3d 295, 297 (Tex. 2004) (per curiam) (noting 
thirty‑minute certification hearing included only brief deposition testimony of 
one claimant).

[10] Union Carbide Corp., 798 S.W.2d at 793 
(reserving question whether transfer of venue alleging local prejudice required 
or allowed oral testimony).

[11] Tilton v. Moyé, 869 
S.W.2d 955, 957 (Tex. 1994); Otis Elevator Co. v. Parmelee, 850 S.W.2d 179, 181 (Tex. 
1993).

[12] Parmelee, 850 S.W.2d 
at 181. 

[13] Tex. R. App. P. 
34.1.

[14] Martin v. Martin, Martin & Richards, Inc., 
989 S.W.2d 357, 359 (Tex. 1998) (per curiam) (“An oral 
hearing on a motion for summary judgment may be helpful to the parties and the 
court, just as oral argument is often helpful on 
appeal.”).

[15] See, e.g., Act of June 17, 1983, 68th 
Leg., R.S., ch. 385, ' 2, 1983 Tex. Gen. Laws 2119, 2124 (repealing Tex. Rev. Civ. 
Stat. art. 2008, which provided for plea of privilege hearings); Tex. R. Civ. P. 
120(a) (amended to allow proof by affidavit in special appearances, 
785-786 S.W.2d (Tex. Cases) xlviii (1990)).

[16] See Tilton, 869 S.W.2d at 957 (“The order at 
issue, however, indicates that the trial court's consideration of the motion to 
compel was based only on the argument of counsel. Additionally, at oral 
argument, counsel for Smith conceded that the trial court took no testimony at 
the hearings. Thus, no statement of facts is necessary.”); Otis Elevator 
Co., 850 S.W.2d at 181 (“The court of appeals held that defendants were 
precluded from raising their complaint on appeal because they had failed to 
bring forward a statement of facts from [other pretrial] hearings. This holding, 
too, is incorrect. There is no indication or assertion that any other hearing to 
which [plaintiff] alludes involved the taking of evidence.”). 


[17] See, e.g., Tex. R. App. P. 44.1, 61.1; Walker 
v. Packer, 827 S.W.2d 833, 837 (Tex. 1992) (“Since an evidentiary hearing 
was held, the Walkers had the burden of providing us not only a petition and 
affidavit, but also a statement of facts from the hearing.”) (citation omitted); 
see also RP&R, Inc. v. Territo, 32 S.W.3d 
396, 401 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (reversing temporary 
injunction as record contained no testimony from 
claimant).

[18] 873 S.W.2d 368, 370-71 (Tex. 
1993).

[19] Id. at 370.

[20] Compare Tex. R. App. P. 11(a), 49 Tex. B.J. 961 (1986, superseded 1997) 
with Tex. R. App. P. 
13.1(a) (adopted in 1997); see also Tex. Gov't 
Code ' 52.046(a) (requiring a court reporter to attend court 
and make a record “on request”); id. ' 54.046(c) (granting Supreme Court authority to adopt 
rules governing court reporter’s duties in civil proceedings). 


[21] Piotrowski, 873 
S.W.2d at 370-71.

[22] Tex. 
Disciplinary R. Prof’l Conduct 3.03 (requiring 
candor toward tribunal); Tex. Lawyer’s 
Creed: A Mandate for Professionalism IV(6) (“I will not knowingly 
misrepresent, mischaracterize, misquote or miscite 
facts or authorities to gain an advantage.”).

[23] Bennett v. Cochran, 96 S.W.3d 227, 230 (Tex. 
2002) (per curiam).

[24] See BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 796 (Tex. 2002) (“Specific 
jurisdiction is established if the defendant's alleged liability arises from or 
is related to an activity conducted within the 
forum.”).

[25] City of Riverview, Michigan v. Am. Factors, 
Inc., 77 S.W.3d 855, 858 (Tex.App.CDallas 2002, no pet.); Hayes v. Wissel, 882 S.W.2d 97, 98-100 (Tex.App.CFort Worth 1994, no pet.); Laykin v. McFall, 
830 S.W.2d 266, 269 (Tex.App.CAmarillo 1992, no pet.); C.W. Brown Mach. Shop, Inc. 
v. Stanley Mach. Corp., 670 S.W.2d 791, 793 (Tex.App.CFort Worth 1984, no writ).

[26] 127 S.W.3d at 95; Boissiere v. Nova Capital, LLC, 106 S.W.3d 
897, 904 (Tex. App.CDallas 2003, no pet.); Ahadi v. Ahadi, 61 
S.W.3d 714, 720 (Tex. App.CCorpus Christi 2001, pet. denied); Ring Power Sys. v. 
Int’l de Comercio y Consultoria, 39 S.W.3d 350, 353-54 (Tex. 
App.CHouston [14th Dist.] 2001, no pet.); Mem. Hosp. Sys. v. Fisher Ins. Agency, 835 
S.W.2d 645, 650-51 (Tex. App.CHouston [14th Dist.] 1992, no writ). 


[27] 357 U.S. 235, 253 (1958) (emphasis 
added).

[28] Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 
(1985).

[29] Id.

[30] Id. at 473 (citing Travelers Health Assn. v. 
Virginia, 339 U.S. 643, 647 (1950)).

[31] Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 
774 (1984).

[32] See Merriam Webster’s Collegiate Dictionary 79 
(10th ed. 1993)(“Avail: . 
. . to be of use or advantage to: profit.”).

[33] World‑Wide Volkswagen Corp. v. Woodson, 444 U.S. 
286, 297 (1980) (“The Due Process Clause . . . gives a degree of predictability 
to the legal system that allows potential defendants to structure their primary 
conduct with some minimum assurance as to where that conduct will and will not 
render them liable to suit.”); Am. Type Culture Collection, Inc. v. 
Coleman, 83 S.W.3d 801, 808 (Tex. 2002).

[34]Burger King, 
471 U.S. at 473.

[35] 326 U.S. 310, 313-14 
(1945).

[36] Id. at 320.

[37] Siskind v. Villa 
Found. for Educ., Inc., 642 S.W.2d 434, 436 (Tex. 
1982). 

[38] Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 
199, 201 (Tex. 1985) (per curiam).

[39] See, e.g., Reiff v. 
Roy, 115 S.W.3d 700, 705-06 (Tex.App.CDallas 2003, pet. denied) (surveying Texas law on 
Internet activities). 

[40] Asahi Metal Ind. Co., Ltd. v. Superior Court, 
480 U.S. 102, 121 (1987) (Brennan, J., concurring in 
part).

[41] Id. at 112 (O’Connor, J., plurality 
opinion).

[42] Id. at 122 (Stevens, J., concurring in 
part).

[43] CMMC v. Salinas, 929 S.W.2d 435, 400 (Tex. 1996) 
(“If anything, Keen suggests that we would follow Justice O'Connor's 
formulation of the stream‑of‑commerce rule in Texas.”). 


[44] CSR Ltd. v. Link, 925 S.W.2d 591, 595‑96 (Tex. 
1996).

[45] CMMC, 929 S.W.2d at 
439.

[46] 127 S.W.3d at 96.

[47] Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n.18, 478 
(1985).

[48] World‑Wide Volkswagen Corp. v. Woodson, 444 U.S. 
286, 295 (1980).

[49] Id. at 296-97.

[50] Id. at 298.

[51] 929 S.W.2d 435 (Tex. 1996).

[52] Id. at 436.

[53] Id. at 439.

[54] Id. at 480.

[55] McGee v. Int’l Life Ins. Co., 355 U.S. 220, 223 
(1957).

[56] Int’l Shoe, 326 U.S. at 
319.

[57] Woodson, 444 U.S. at 
299.

[58] Id. at 296.

[59] 929 S.W.2d 435, 436 (Tex. 1996) (emphasis added). 
CMMC also made clear that, to the extent of any conflict, our earlier 
opinion in Keen v. Ashot Ashkelon, Ltd., 748 S.W.2d 91 (Tex. 1988) should not be 
read to extend stream-of-commerce jurisdiction to a single sale. 929 S.W.2d at 
439-40.

[60] Tex. Civ. Prac. & Rem. Code ' 17.042(2).

[61] BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002); U‑Anchor 
Adver., Inc. v. Burt, 553 S.W.2d 760, 762 
(Tex.1977).

[62] Woodson, 444 U.S. at 288; CMMC, 929 
S.W.2d at 437; see also Antonio v. Marino, 910 S.W.2d 624, 628 (Tex. 
App.CHouston [14th Dist.] 1995, no writ) (holding nonresident 
shipowner whose agent assaulted and denied wages to 
seamen in Texas port had not purposefully availed itself of Texas as ship’s 
location was fortuitous).

[63] 127 S.W.3d at 95; Morris v. Powell, 150 S.W.3d 
212, 221 (Tex.App.CSan Antonio 2004, no pet.); Stern v. KEI Consultants, 
Ltd., 123 S.W.3d 482, 490 (Tex.App.CSan Antonio 2003, no pet.); AmQuip Corp. v. Cloud, 73 S.W.3d 380, 386 
(Tex. App.CHouston [1st Dist.] 2002, no pet.); Ahadi v. Ahadi, 61 
S.W.3d 714, 720 (Tex.App.CCorpus Christi 2001, pet. denied); Shapolsky v. Brewton, 56 S.W.3d 120, 134 (Tex. 
App.CHouston [14th Dist.] 2001, pet. denied); Royal Mortg. Corp. v. Montague, 41 S.W.3d 721, 731 (Tex. 
App.CFort Worth 2001, no pet.); Mem’l Hosp. Sys. v. Fisher Ins. Agency, Inc., 
835 S.W.2d 645, 650 (Tex. App.CHouston [14th Dist.] 1992, no writ); see also Southmark Corp. v. Life Investors, Inc., 851 F.2d 763, 
772 (5th Cir.1988).

[64] Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 
(1985).

[65] National Indus. Sand Ass'n 
v. Gibson, 897 S.W.2d 769, 773 (Tex. 1995).

[66] Burger King, 471 U.S. at 474 (quoting 
Woodson, 444 U.S. at 297).

[67] Calder v. Jones, 465 U.S. 783, 785 n.2 
(1984).

[68] 465 U.S. 770, 772, 778 
(1984).

[69] Id. at 781.

[70] See D.J. Invs., Inc. v. 
Metzeler Motorcycle Tire Agent Gregg, Inc., 754 
F.2d 542, 547 (5th Cir. 1985) (basing jurisdiction on nonresident’s transfer of 
its distributorship rights in forum state); Union Carbide Corp. v. UGI 
Corp., 731 F.2d 1186, 1189‑90 (5th Cir. 1984) (basing jurisdiction on acts 
that sought to obtain business in Texas); Brown v. Flowers Indus., Inc., 
688 F.2d 328, 333‑34 (5th Cir. 1982) (basing jurisdiction on defamatory phone 
call to district attorney attempting to wrest business from resident); Miss. 
Interstate Exp. Inc. v. Transpo, Inc., 681 F.2d 
1003, 1006, 1008 (5th Cir. 1982) (basing jurisdiction on nineteen shipping 
contracts between nonresident broker and resident trucking firm). Especially 
troubling is the Court’s reliance on Thompson v. Chrysler Motors Corp., 
755 F.2d 1162 (5th Cir. 1985), in which not only were the dispositive acts entirely different from anything here 
(i.e., a post-sale shipment of a defective replacement part to the forum state), 
but the court expressly acknowledged that jurisdiction would not 
exist on facts identical to those here. Id. at 1171 (“[T]he 
mere knowledge that [defendant] was selling to [forum state] residents would be 
insufficient to support the exercise of 
jurisdiction.”).

[71] Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 
(1984) (quoting Shaffer v. Heitner, 433 U.S. 
186, 204 (1977)) (emphasis added).

[72] See Rush v. Savchuk, 
444 U.S. 320, 332 (1980) (emphasis added).

[73] See, e.g., Tracker Marine, L.P. v. Ogle, 108 
S.W.3d 349, (Tex. App.BHouston [14th Dist.] 2003, no pet.); Restatement (Second) Conflict of Laws 
' 148(2)(a).

[74] Restatement § 
6.

[75] Burger King, 471 U.S. at 
481-82.

[76] See, e.g., Nat’l Indus. Sand Ass'n v. Gibson, 897 S.W.2d 769, 774 (Tex. 1995) 
(holding opposition to silica regulation could not form basis of jurisdiction as 
it was constitutionally protected activity); Mabry v. Reid, 130 S.W.3d 
385, 389 (Tex. App.‑Beaumont 2004, no pet.) (affirming order granting special 
appearance as some evidence supported trial court's factual determination that 
either there was no settlement agreement or it was not fraudulent); Boissiere v. Nova Capital, LLC, 106 S.W.3d 
897, 904 (Tex. App.CDallas 2003, no pet.) (affirming order denying special 
appearance as some evidence supported trial court's factual determination that 
nonresidents committed misrepresentation); French v. Glorioso, 94 S.W.3d 739, 746-47 (Tex.App.CSan Antonio 2002, no pet.) (affirming order granting 
special appearance as some evidence supported trial court's factual 
determination that nonresident never made any misrepresentations to resident); 
Runnells v. Firestone, 746 S.W.2d 845, 851-52 (Tex. App.CHouston [14th Dist.] 1988), writ denied, 760 
S.W.2d 240 (Tex. 1988) (affirming order granting special appearance as some 
evidence supported trial court's factual determination that there was no 
contract).

[77] Am. Type Culture Collection, Inc. v. Coleman, 83 
S.W.3d 801, 805-06 (Tex. 2002).

[78] See CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 
1996).

[79] See, e.g., PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P’ship, 
146 S.W.3d 79, 83 (Tex. 2004) (noting that Texas law allows consumers to assert 
warranty claims as breach of contract or violation of DTPA); Formosa Plastics 
Corp. USA v. Presidio Eng’rs and Contractors, 
Inc., 960 S.W.2d 41, 46 (Tex. 1998) (holding Texas law allows party 
fraudulently induced to sign contract to sue in contract or 
tort).

[80] See, e.g., ___ S.W.3d at ___ (“Today the Court 
holds that an out‑of‑state defendant who intentionally defrauds a Texas 
resident, with full knowledge that reliance and damages will occur in Texas, 
cannot be made to answer for its conduct in a Texas court simply because the 
defrauded Texan initiated the phone call.”).

[81] Boissiere v. Nova 
Capital, LLC, 106 S.W.3d 897, 904-05 (Tex. App.CDallas 2003, no pet.); Ahadi v. Ahadi, 61 
S.W.3d 714, 720 (Tex. App.CCorpus Christi 2001, pet. denied); Ring Power Sys. v. 
Int’l de Comercio y Consultoria, 39 S.W.3d 350, 353-54 (Tex. 
App.CHouston [14th Dist.] 2001, no pet.); Mem. Hosp. Sys. v. Fisher Ins. Agency, 835 
S.W.2d 645, 650-51 (Tex. App.CHouston [14th Dist.] 1992, no 
writ).

[82] Mabry v. Reid, 130 S.W.3d 385, 389 (Tex. 
App.‑Beaumont 2004, no pet.) (affirming order granting special appearance as 
some evidence supported trial court's factual determination that either there 
was no settlement agreement or it was not fraudulent); Boissiere v. Nova Capital, LLC, 106 S.W.3d 
897, 904 (Tex. App.CDallas 2003, no pet.) (affirming order denying special 
appearance as some evidence supported trial court's factual determination that 
nonresidents committed misrepresentation); French v. Glorioso, 94 S.W.3d 739, 746-47 (Tex.App.CSan Antonio 2002, no pet.) (affirming order granting 
special appearance as some evidence supported trial court's factual 
determination that nonresident never made any misrepresentations to resident); 
Runnells v. Firestone, 746 S.W.2d 845, 851-52 (Tex. App.CHouston [14th Dist.] 1988), writ denied, 760 
S.W.2d 240 (Tex. 1988) (affirming order granting special appearance as some 
evidence supported trial court's factual determination that there was no 
contract). 

[83] 127 S.W.3d at 98. 

[84] See, e.g., Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 
585, 595 (1991) (upholding forum-selection clause without discussing contacts 
between nonresident passengers and forum state).

[85] See Siskind v. Villa 
Found. for Educ., Inc., 642 S.W.2d 434, 437 (Tex. 
1982).

[86] Burger King, 471 U.S. at 
482.

[87] In re Automated Collection Techs., Inc., 
156 S.W.3d 557, 559 (Tex. 2004) (per curiam) 
(holding forum-selection clause was not waived without showing of 
prejudice).

[88] See Tex. 
R. Civ. P. 11.

[89] Automated Collection Techs., Inc., 156 S.W.3d at 
559 (Tex. 2004) (quoting In re AIU Ins. Co., 148 S.W.3d 109, 112 (Tex. 
2004)).

[90] Woodson, 444 U.S. at 
292.

[91] See Helicopteros Nacionales 
de Colombia, S.A. v. Hall, 466 U.S. 408 (1984).

[92] See McGee v. Int’l Life Ins. Co., 355 U.S. 220 
(1957).

[93] Woodson, 444 U.S. at 296-99. 

[94] Kulko v. Superior 
Court of California, 436 U.S. 84, 93-94(1978).

[95] Hanson v. Denckla, 357 
U.S. 235, 251-54 (1958).