**DELTA BRANDS, INC., Appellant,**

v.

**RAUTARUUKKI STEEL, Appellee.**

No. 05–02–01743–CV.

Court of Appeals of Texas, Dallas.

Oct. 31, 2003.

Baxter W. Banowsky, Banowsky Betz & Levine, P.C., Dallas, for Appellant.

John Alex Huddleston, Andrew L. Kerr, Jonathan S. Miles, Holland & Knight LLP, San Antonio, for Appellee.

Before Justices MORRIS, O'NEILL, and LANG.

## OPINION

Opinion by Justice O'NEILL.

Delta Brands, Inc. (DBI) appeals the trial court's order sustaining Rautaruukki Steel's special appearance. We hold that Rautaruukki had sufficient minimum contacts to support the exercise of specific personal jurisdiction over it in Texas. We reverse and remand for further proceedings.

## Facts

The jurisdictional facts are undisputed. DBI designs and manufactures steel processing equipment. It is a Texas corporation with its headquarters in Irving, Texas. Rautaruukki Steel (Rautaruukki) develops, manufactures, and markets steel products and related services. It is a division of a Finnish corporation, Rautaruukki Group (the Group), headquartered in Finland. Neither the Group nor Rautaruukki has offices, facilities or employees in the United States, except the Group has an affiliate in Northbrook, Illinois, that markets steel products.

In the fall of 2001, Rautaruukki made inquiries to suppliers, seeking a solution on how to remove residual stresses from coiled steel. In November 2001, DBI traveled to Finland to visit Rautaruukki. DBI suggested an in-line temper mill and proposed they test a quantity of Rautaruukki-manufactured steel in a plant where a client of DBI uses a DBI temper mill. The trip occurred in February 2001, with a predetermined agenda beginning with observation of DBI equipment in the Steel Warehouse facility in Memphis, Tennessee, followed by travel to DBI headquarters in Irving, Texas, and ending with observation of DBI equipment in use in Indiana and Illinois.

When the Rautaruukki representatives arrived in Memphis, before they were allowed to observe any equipment, they were asked to sign a confidentiality agreement. Under the agreement, Rautaruukki undertook not to disclose any information concerning the engineering design of DBI technology, including any data, drawing, or equipment discussed with, or viewed by, Rautaruukki.

After observing the equipment in Memphis, the Rautaruukki representatives traveled to DBI headquarters in Irving, Texas. The two parties conferred all day Friday and Saturday at DBI's offices. During that time, Rautaruukki had access to DBI engineers and received detailed technical specifications and technical drawings, which they took with them when they left. Through the following six months, Rautaruukki sent DBI numerous e-mails requesting technical information, with DBI sending its responses from Texas to Finland. Thereafter, Rautaruukki informed DBI it would not be purchasing an in-line temper mill from DBI.

DBI asserts it is the only company to produce an in-line temper mill that would fit Rautaruukki's physical plant (because other technologies use hump rolls, which take more space). DBI contends that, to its knowledge, its competitors do not have comparable equipment on the European market. When DBI learned that Rautaruukki was negotiating for an in-line temper mill from a European competitor, DBI became concerned that Rautaruukki intended to disclose DBI's proprietary information to the competitor to enable it to copy DBI's technology. DBI obtained a temporary restraining order against Rautaruukki. In response, Rautaruukki filed a special appearance, which the trial court sustained. DBI appeals that order. The trial court did not file findings of fact and conclusions of law.

## Personal Jurisdiction: Minimum Contacts Analysis

### Standard of Review

■ The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). A defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases. *Id.* Whether a court

has personal jurisdiction over a defendant is a question of law. *Id.* at 794. When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* at 795.

### Legal Principles Governing Special Appearance

Two conditions must be met for a Texas court to exercise jurisdiction over a nonresident defendant: the Texas long-arm statute must authorize the exercise of jurisdiction, and the exercise of jurisdiction must be consistent with the guarantees of due process. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990). The long-arm statute provides for the assertion of jurisdiction over any nonresident "doing business" in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(2) (Vernon 1997). Because the language of the long-arm statute is broad, its requirements are considered satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). Thus, in practice, the two conditions are conflated into one requirement of due process. *City of Riverview, Michigan v. Am. Factors, Inc.,* 77 S.W.3d 855, 857 (Tex.App.-Dallas 2002, no pet.).

Personal jurisdiction over nonresident defendants is constitutional when (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Marchand,* 83 S.W.3d at 796 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The defendant's conduct and connection with the state must be such that it could reasonably anticipate being sued in the forum state. *Burger King Corp. v. Rud-zewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A nonresident defendant that has "purposefully availed" itself of the privilege of conducting business in the state—thus invoking the benefits and protections of its law—has sufficient contacts with the forum to confer personal jurisdiction. *Id.* A nonresident defendant must "purposefully do some act or consummate some transaction" in the state. *Schlobohm,* 784 S.W.2d at 358. Random, fortuitous, or attenuated contacts or the unilateral activity of another party or a third person are insufficient. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). It is not the number, but rather the quality and nature of the nonresident defendant's contacts with the forum state that are important. *Id.* at 230 n. 11. Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established minimum contacts with the forum state. *Id.* at 227.

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *Marchand,* 83 S.W.3d at 795–96 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction is established if the defendant's alleged liability "arises from or is related to" an activity conducted within the forum. *Guardian Royal,* 815 S.W.2d at 228. When specific jurisdiction is asserted, the minimum-contact analysis focuses on the relationship among the defendant, the forum, and the litigation. *Id.*

In evaluating whether the assertion of jurisdiction comports with fair play and substantial justice we consider the following factors: (1) the burden on the defendant, (2) the interests of the forum state in

adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and (*Burger King*, 471 U.S. at 477, 105 S.Ct. 2174)).

### Scope of Confidentiality Agreement

 As one basis for negating personal jurisdiction in Texas, Rautaruukki argues that the confidentiality agreement does not cover the technical information that emanated from Texas, but only information disclosed from its viewing the equipment in Tennessee. We disagree. For the purpose of this jurisdictional analysis,[1] our reading of the plain language of the agreement[2] indicates that the agreement encompasses not only the technical information ascertainable from viewing the DBI-made machinery, but also includes "any data, drawing, and piece of equipment" that related to DBI's proprietary technology.

### Application: Minium Contacts and Specific Jurisdiction

 We are mindful that, when the defendant is from a different country, minimum contacts are "particularly important" because of the onerous burden placed on a party called upon to defend a suit in a foreign legal system. *CSR Ltd.*, 925 S.W.2d at 595. We nonetheless conclude that Rautaruukki had sufficient minimum contacts with Texas to support specific jurisdiction.

The gravamen of the cause of action is Rautaruukki's alleged improper disclosure of DBI's proprietary information. The undisputed facts show that Rautaruukki received confidential information from DBI during two days of meetings at its headquarters in Texas, and thereafter in response to numerous requests sent to DBI in Texas. Thus, DBI's cause of action did "arise from or relate to" Rautaruukki's minimum contacts with Texas. Moreover, although Rautaruukki made only one visit to Texas, the quality of that contact is significant: while it was in Texas, Rautaruukki met with DBI's technical staff and

1. We do not reach the merits of any issue concerning the scope of coverage of the confidentiality agreement. *See Boissiere v. Nova Capital, LLC*, 106 S.W.3d 897, 904 (Tex.App.-Dallas 2003, no pet. h.) and *French v. Glorioso*, 94 S.W.3d 739, 747 (Tex.App.-San Antonio 2002, no pet.) (reaching conclusion on implied fact findings on review of special appearance; anticipating jury would decide merits "upon full factual development in proper forum").

2. The agreement states, in pertinent part (emphasis added):

 Prior to your viewing [certain steel processing equipment], because the engineering techniques in such equipment are unique (in that no other equipment in the world has the same capabilities), the engineering of such equipment constitutes proprietary trade secrets that are essential for Steel Warehouse ... and DBI (exclusive rotary shear) [to] maintain their competitive advantage in their industries.

 Because of this it is necessary that this Confidentiality Agreement be executed in order to protect Steel Warehouse ... and DBI from any unauthorized and/or improper use of any of the engineering design of the Plate Rotary Sheer and the In–Line Temper Mill you are about to observe.

 By executing this Confidentiality Agreement, the undersigned, on behalf of Rautaruukki ... agree that *any data, drawing, and piece of equipment discussed and/or disclosed by viewing, and pricing information regarding such equipment, whether it be in the form of a drawing, sketch, proposal, or the equipment itself, shall not be discussed and/or disclosed by the undersigned with any third parties....*

received a portion of the body of proprietary information that was subject to the confidentiality agreement. Further, Rautaruukki's contacts with Texas are not random, fortuitous, or attenuated. Rautaruukki agreed to meet in Irving and knew that the confidential information emanated from the DBI offices in Texas. Thus, Rautaruukki could reasonably foresee that it could be haled into a Texas court to answer for the alleged improper disclosure of DBI's proprietary information.

 In addition, the assertion of jurisdiction comports with fair play and substantial justice. The first factor, the burden on the defendant, weighs in favor of Rautaruukki. The second factor, the interest in the forum state in adjudicating the dispute, weighs in DBI's favor, as does the third factor, the plaintiff's interest in obtaining convenient and effective relief. The fourth factor, the interstate judicial system's interest in obtaining the most efficient resolution, appears to be neutral, based on the record facts. The fifth factor, the shared interest of the several states in furthering fundamental substantive social policies, also appears neutral. The parties do not argue that this case would affect any substantive Finnish policies. *See Guardian Royal Exchange,* 815 S.W.2d at 228–29 (where foreign defendant involved, court should consider policies of other nation whose interests are affected). Accordingly, we resolve the personal jurisdiction issue in DBI's favor.

We reverse the trial court's order sustaining Rautaruukki's special appearance and remand for further proceedings consistent with this opinion.