**David H. HOFFMANN, Appellant,**

v.

**Jeff DANDURAND, Appellee.**

No. 05–03–01396–CV.

Court of Appeals of Texas, Dallas.

Sept. 1, 2004.

D. Kevin McCorkindale, Kasselman & McCorkindale, P.C., Plano, for Appellant.

Ashley E. Frizzell, Diana L. Faust, Gordon K. Wright, Cooper & Scully, P.C., Dallas, for Appellee.

Before Justices MOSELEY, BRIDGES, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

In this interlocutory appeal, David H. Hoffmann[1] appeals an order denying his special appearance in a suit brought by Jeff Dandurand. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon Supp. 2004—05). Hoffmann presents three issues generally contending that his special appearance should have been granted by the trial court. Hoffmann argues that the trial court erred in ruling that it had specific and general jurisdiction over him. He also argues that the exercise of personal jurisdiction over him by the trial court offends traditional notions of fair play and substantial justice, and is inconsistent with the constitutional requirements of due process. We reverse and remand the matter for further proceedings on Hoffmann's special appearance.

---

1. We note that the record contains two different spellings of the appellant's last name: (1) Hoffmann; and (2) Hoffman. The appellant consistently uses the first spelling. Accordingly, we use that spelling throughout this opinion.

### Factual and Procedural Background

Dandurand was an employee of DHR International, Inc. for over five years. He alleges that in November 1996 he entered into an agreement with DHR International, Inc. to buy rights to purchase stock. This agreement was signed by David H. Hoffmann and Dandurand. The terms of this agreement include a repurchase clause that gives Dandurand the right to sell his purchase rights back to DHR International, Inc. This agreement also states that all notices, requests, demands, and other communications must be sent to Dandurand at his Plano, Texas address. Dandurand also alleges that in July of 1997 he exercised his repurchase rights and that he and DHR International, Inc. agreed upon a repurchase price to be made in five annual payments. Dandurand acknowledges that he received the first four of the five annual payments, but claims that he never received the fifth annual payment that was due.

On May 28, 2002, Dandurand filed suit against DHR International, Inc., Hoffmann Investment Company, Inc., Riverwalk International, Inc., and David H. Hoffmann for breach of a contract between Dandurand and Hoffmann Investment Company, Inc., formerly known as DHR International, Inc. Dandurand sued DHR International, Inc. and Riverwalk International, Inc., alleging that they are part of a common business enterprise with Hoffmann Investment Company, Inc. Dandurand sued Hoffmann, individually, alleging that he stripped Hoffmann Investment Company, Inc. of its assets, denuding the corporation of its assets and its ability to pay under the terms of the contract.

DHR International, Inc. and Hoffmann Investment Company, Inc. filed their original answers on July 11, 2002, generally appearing in the lawsuit. Hoffmann and Riverwalk International, Inc. filed their special appearances on July 11, 2002. On August 14, 2003, Hoffmann and Riverwalk International, Inc. filed their first amended special appearances and original answers subject thereto. In support of their special appearances, they attached the affidavit of David H. Hoffmann and several exhibits.

On August 19, 2003, Dandurand filed his response to their special appearances. Dandurand's response stated that Hoffmann's recent deposition testimony indicated that Riverwalk International, Inc. has never done business in Texas and that "[t]he special appearance may be well taken." Dandurand's response also stated that Hoffmann had failed to negate all bases for jurisdiction, but failed to attach any evidence or affidavit testimony.

■ On September 5, 2003, without a hearing, the trial court signed orders overruling Hoffmann's and Riverwalk International, Inc.'s special appearances. Hoffmann and Riverwalk International, Inc. requested findings of fact and conclusions of law from the trial court on September 19, 2003. On September 30, 2003, Dandurand submitted proposed findings of fact and conclusions of law.[2] On October 7, 2003, Hoffmann submitted his proposed findings of fact and conclusions of law to the trial court. On October 15, 2002, the trial court signed its Findings of Fact and Conclusions of Law Associated with Special Appearance of David H. Hoffman.[3]

---

**2.** Dandurand's proposed findings of fact and conclusions of law submitted on September 30, 2003, were not included in the record on appeal.

**3.** The trial court's findings of fact and conclusions of law spell Hoffmann's name with only one "n." Under the doctrine of *idem sonans,* if the name spelled in a legal document is different from the correct spelling, but when the

The trial court made the following findings of fact:

(1) Jeff Dandurand is a Texas resident; he seeks to maintain suit against David H. Hoffmann, an Illinois resident who has challenged this Court's personal jurisdiction over him.

(2) Hoffmann was the majority stockowner of DHR International, Inc.

(3) Dandurand and DHR had a contract with one another.

(4) Pursuant to the contract, Dandurand purchased an interest in DHR, in exchange for stock that he owned, and could elect to receive monies back from DHR if he discontinued his interest.

(5) When Dandurand sought to discontinue his interest in DHR, it didn't pay him; Dandurand's claim against DHR and Hoffmann is the subject of this suit.

(6) When Dandurand and DHR made the contract, Hoffmann owned 93% of DHR's stock, and signed the contract on its behalf.

(7) Later, in a certain transaction, EPS Solutions, Inc. acquired the contract from DHR.

(8) DHR ceased to exist at or near the time that EPS acquired the contract.

(9) Eleven months later, Hoffmann became a corporate officer of EPS, and later still its chief executive officer, chairman of the board and director.

(10) EPS too eventually ceased to exist, but it sold the contract to another corporation before it did.

(11) The name of that corporate purchaser was DHR International, Inc., the same name as the entity that EPS acquired the contract from.

(12) When the second DHR bought the contract, Hoffmann was a director owing [sic] at least 51% of its stock, and later became its chief executive officer and chairman-of-the-board.

(13) According to Hoffmann, when the second DHR purchased the contract, it acquired only benefits, and not liabilities like Dandurand's claim.

(14) Consequently, the second DHR does not owe any payment to Dandurand, Hoffmann says.

The trial court also made the following conclusions of law:

(1) As he admits on line 10, page 3 of his amended special-appearance pleading, in his capacity as an officer of DHR International, Inc., Hoffmann had some limited contacts in Texas relating to transactions made the subject matter of this suit.[4]

(2) And to enrich himself individually, Hoffmann used his corporate authority in DHR International, Inc. to destroy, or attempt to destroy Dandurand's claim against it.

On October 15, 2003, the trial court also vacated its order overruling the special

commonly pronounced sounds are practically identical to the correctly spelled name, then the variant orthography is immaterial. *Bosse v. Cadwallader*, 86 Tex. 336, 342, 24 S.W. 798, 800 (1894). *See also Westcliffe, Inc. v. Bear Creek Constr., Ltd.*, 105 S.W.3d 286, 291 (Tex. App.-Dallas 2003, no pet.).

4. Page three lines 9–11 of Hoffmann's First Amended Special Appearance Challenging Personal Jurisdiction and Original Answer Subject Thereto states, "Defendant David H. Hoffmann may have had some limited contacts with the State of Texas relating to the transaction that is the subject matter of this lawsuit . . ."

appearance of Riverwalk International, Inc. and dismissed it from the lawsuit. On October 24, 2003, Hoffmann filed his request for the trial court to amend its findings of fact and conclusions of law. The trial court denied Hoffman's request for amended findings of fact and conclusions of law on October 26, 2003. On October 28, 2003, Dandurand filed his request for additional findings of fact and conclusions of law requesting that the trial court enter the proposed findings of fact and conclusions of law that he previously submitted on September 30, 2003.[5] There is no order on Dandurand's Request for Additional Findings of Fact and Conclusions of Law in the record. Hoffmann appeals the trial court's denial of his special appearance.

### Applicable Law

■■ In Texas, a party to a lawsuit may object to a trial court's jurisdiction over him by filing a special appearance. Tex.R. Civ. P. 120a(1). A challenge to personal jurisdiction by special appearance, which is a dilatory plea, almost always requires consideration of evidence. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000). While that evidence may touch upon the merits of the case, it focuses on the defendant's contacts with the forum, not whether the defendant may be liable as alleged. *Id.* A trial court's decision to exercise or decline to exercise jurisdiction should rely only upon the necessary jurisdictional facts and should not reach the merits of the case. *See Bruno's, Inc. v. Arty Imports, Inc.*, 119 S.W.3d 893, 897 (Tex.App.—Dallas 2003, no pet.); *Boissiere v. Nova Capital, LLC*, 106 S.W.3d 897, 903 (Tex.App.—Dallas 2003, no pet.). A trial court should confine itself to the evidence relevant to the jurisdictional issue. *Bland*, 34 S.W.3d at 555.

■■ In any case tried in the district or county court without a jury, any party may request the trial court to state in writing its findings of fact and conclusions of law. Tex.R. Civ. Proc. 296. *See also In re Marriage of Edwards*, 79 S.W.3d 88, 94 (Tex.App.—Texarkana 2002, no pet.). After a trial court enters its original findings of fact and conclusions of law, any party may file a request for specified additional or amended findings and conclusions. Tex.R. Civ. Proc. 298. A trial court only needs to enter additional findings on ultimate or controlling issues. *See Edwards*, 79 S.W.3d at 94–95. An ultimate fact issue is one that is essential to the cause of action and that would have a direct effect on the judgment. *Id* at 95. A trial court is not required to make additional findings of fact that are unsupported in the record or that are contrary to other previous findings. *Tillery & Tillery v. Zurich Ins. Co.*, 54 S.W.3d 356, 361 (Tex.App.—Dallas 2001, pet. denied). *See also Edwards*, 79 S.W.3d at 95; *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 838 (Tex.App.—Texarkana 1996, writ denied).

■ In general, the failure to make additional findings of fact and conclusions of law after a timely request requires reversal unless the record affirmatively shows the complaining party has not suffered injury. *Tillery*, 54 S.W.3d at 360.

### Application of the Law to the Facts

■ In three issues on appeal, Hoffmann argues (1) that the trial court erred in ruling that it had specific jurisdiction over him, (2) that the trial court erred in ruling that it had general jurisdiction over him, and (3) that the exercise of personal jurisdiction over him by the trial court offends traditional notions of fair play and

---

**5.** Exhibit A of Dandurand's Request for Additional Findings of Fact and Conclusions of Law was not included in the record on appeal.

substantial justice, and is inconsistent with the constitutional requirements of due process. Dandurand contends that the trial court has both specific and general jurisdiction over Hoffmann.

The trial court's findings of fact do not address the issues raised by the special appearance or Hoffmann's minimum contacts with Texas, but rather appear to reach the merits of the case. The trial court also made two conclusions of law, which resemble findings of fact, and are not supported by its findings of fact. When reaching a decision to exercise or decline jurisdiction based on the defendant's commission of a tort, the trial court should rely only upon the necessary jurisdictional facts and should not reach the merits of the case. *See Boissiere,* 106 S.W.3d at 903. Instead, the court must decide whether Hoffmann established minimum contacts with Texas and whether the exercise of personal jurisdiction over him would offend traditional notions of fair play and substantial justice. *See Delta Brands, Inc. v. Rautaruukki Steel,* 118 S.W.3d 506, 510 (Tex.App.-Dallas 2003, pet.denied); *Gustafson v. Provider Healthnet Servs., Inc.,* 118 S.W.3d 479, 482 (Tex.App.-Dallas 2003, no pet.); *Boissiere,* 106 S.W.3d at 905. *See generally World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Am. Type Culture Collection, Inc., v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002), *cert. denied,* 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003); *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002).

The trial court's findings of fact and conclusions of law do not address the issues of personal jurisdiction over Hoffmann. As a result, the trial court's findings of fact and the conclusions of law

force this court to guess the reason or reasons that the trial court found that it had personal jurisdiction over Hoffmann. Further, both parties requested that the trial court make amended or additional findings of fact and conclusions of law, which the trial court denied. Without deciding the merits of the trial court's denial of Hoffmann's special appearance, we conclude that the failure of the trial court to amend or make additional findings of fact and conclusions of law prevent adequate presentation of Hoffmann's appeal of the trial court's denial of his special appearance on appeal.

The trial court's order denying Hoffmann's special appearance is reversed and remanded for further proceedings consistent with this opinion.