Karen C. REYNOLDS, Appellant

v.

Neal NAGELY d/b/a Law Firm of Neal Nagely, Appellee.

No. 05-06-00856-CV.

Court of Appeals of Texas, Dallas.

Aug. 21, 2008.

Byron Kevin Henry, Cowles & Thompson, PC, James C. Mosser, Mosser Mallers PLLC Lawyers, Dallas, for Appellant.

Chad Michael Ruback, The Ruback Law Firm, James J. McGoldrick, Jones, Carr, McGoldrick, L.L.P., Dallas, for Appellee.

Before Justices RICHTER, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice RICHTER.

This appeal concerns interpleaded uninsured motorist (UIM) proceeds deposited in the trial court's registry after a dispute arose among the insured Karen C. Reynolds, her former attorney Neal Nagely d/b/a Law Firm of Neal Nagely, and her current attorney Mosser Mallers, P.L.L.C. ("Mosser"). It also involves a suit for declaratory relief, breach of contract, and attorney's fees brought by Nagely against Reynolds. Ultimately, the trial court granted the interpleader action, dis-charged the interpleader, dismissed Mosser, and denied the suit for declaratory judgment. The trial court also rendered judgment on the verdict by the jury, which heard the breach of contract claim and finding Reynolds had breached the contract, awarded Nagely damages and attorney's fees. In four issues, Reynolds argues (a) the evidence is legally insufficient to support Nagely's breach of contract claim and award of attorney's fees; (b) the trial court erred in failing to render judgment and failing to file findings of facts and conclusions of law in either the interpleader or declaratory judgment actions; (c) the trial court erred in failing to find she was entitled to the interpleader funds; and (d) *Mandell & Wright v. Thomas,* 441 S.W.2d 841 (Tex.1969) should be overruled. We modify the judgment and, as modified, affirm.

## Background

Reynolds retained Nagely to represent her "for personal injuries sustained" in a hit-and-run accident in June of 1999. The terms of the representation were contained in a contingent fee contract signed August 10, 1999. In relevant part, the contract provided that Reynolds

> [f]or and in consideration of the services to be rendered by [Nagely] ... agree[d] and obligate[d herself] to give and allow him as his compensation 33 1/3% of all that he recover[ed] herein if a settlement [was] reached before lawsuit [was] filed; or 40% of all that he recover[ed] herein if settlement [was] reached after lawsuit [was] filed; or 45% of all that he recover[ed] herein after trial.

Additionally, Reynolds "assign[ed Nagely] his interest out of avails of the recovery and agree[d] it [was] not necessary that he become a party to any suit."

Over the next eight months, Nagely and his insurance adjuster Steve Frazier worked with Reynolds's automobile insurer USAA Casualty Insurance Company to secure $9148.76 in personal injury protection (PIP) benefits for Reynolds and to persuade Reynolds's health insurance carrier "to pay [Reynolds's] medical, hospital, and surgical bills [related to the accident]" and "to abandon any effort to seek credit for USAA's PIP payment." Additionally, they pursued an UIM claim for Reynolds as the driver who hit her was never located. However, on April 28, 2000, before any UIM benefits could be secured, Reynolds terminated Nagely "for not taking care of her properly" and "not doing his job." Bills were mounting, she was unable to work as much as she did prior to the accident, and she believed she was entitled to her UIM benefits immediately.

Twenty months later, USAA offered to settle Reynolds's claim for the $100,000 UIM policy limit. At the time, Reynolds was not represented by counsel, but having been earlier informed by Nagely that he was retaining a "lien" on her claim, USAA informed Reynolds that the settlement check would be payable to both her and Nagely. Refusing to pay Nagely his one-third contingent fee, Reynolds refused the UIM proceeds and informed USAA to contact Mosser. USAA attempted to negotiate the terms of payment with Nagely and Mosser, but in September 2002, when its efforts had failed, it filed its interpleader action against Reynolds, Nagely, and Mosser and deposited the UIM proceeds into the court's registry. *See* TEX.R. CIV. P. 43.

Nagely answered the suit and counterclaimed against Reynolds for declaratory relief, breach of contract, and attorney's fees under chapter 38 of the Texas Civil Practice and Remedies Code. Reynolds answered and filed claims against USAA for bad faith and breach of contract. Reynolds's claims were subsequently settled and dismissed, and Mosser was also dismissed. Without hearing evidence, the trial court then signed an order granting USAA's interpleader action, discharging USAA from the suit, and leaving Nagely's claims against Reynolds to be resolved. *See Avila v. Lone Star Radiology*, 183 S.W.3d 814, 816 (Tex.App.-Waco 2005, no pet.) (if interpleader suit appropriate, innocent stakeholder is discharged from liability with respect to the funds, leaving for the court to decide who is entitled to the funds).

After Nagely's declaratory action was orally denied by the trial court following a non-evidentiary hearing, Nagely's breach of contract claim was tried to the jury. Testifying at trial were two USAA claim adjusters, Reynolds, Frazier, and Nagely.[1]

The claim adjusters testified that Reynolds was demanding, uncooperative, and "difficult." She used profanity, communicated directly with USAA despite being repeatedly told that all communications should go through Nagely, threatened to have one of the claims adjusters fired, and revoked her authorization for medical records. Although Nagely had not made a "formal" request for UIM benefits, the adjusters knew he was seeking those benefits for Reynolds. The adjusters testified their evaluation of the claim was "slow" because her case was complex and could

---

1. Also testifying were Nagely's attorney, who testified over Reynolds's objection that he had not been properly designated as an expert, and Reynolds's expert. Nagely's attorney testified as to attorney's fees while Reynolds's expert testified as to attorney professionalism and opined that Nagely was not entitled to collect his fee for the UIM proceeds because of the twenty-month gap between his termination and the offer of settlement.

not have been resolved in the eight months Nagely represented Reynolds. They explained Reynolds had been in a car accident in 1997 and received $100,000 in UIM benefits for that accident. The injuries she sustained in that accident were similar to the injuries sustained in the hit-and-run accident, and as a result, the evaluation of medical records was critical.[2] She was still under medical care when she terminated Nagely and did not provide all the necessary records in support of her claim until the middle of 2001.

Nagely and Frazier testified as to their work for Reynolds, including work on the UIM claim, and concurred with the claim adjusters' testimony that Reynolds's claim was complex because of the various issues involved. They were aware and sympathetic of Reynolds's financial difficulties and "advanced" her $300 from her anticipated PIP recovery for her rent. Additionally, knowing of Reynolds's financial situation, Nagely opted not to collect his fee on the PIP proceeds. Although they did not copy Reynolds on correspondence they sent to USAA and did not advise her in writing as to the status of her case, they kept her informed by telephone. Because of the complexity of her claim, they did not believe it could have been resolved in the eight months of Nagely's representation but they were confident it would be resolved favorably and would have pursued the claim until it was resolved if Reynolds had not terminated Nagely.

Reynolds admitted she was frustrated with USAA, a frustration that began with the handling of her 1997 claim, and admitted revoking her authorization for medical records. She explained she revoked the authorization because USAA wanted records "going back to 1982" and her doctor had "advised" her those records were not necessary. Reynolds testified she was also frustrated with Nagely and Frazier for not "keep[ing] her in the loop." She initiated all communications with them and they never explained the delay in processing her UIM claim. She believed her UIM claim could have been resolved in the spring of 2000 when she provided what she thought were "the last of the records," although she admitted she later had two additional surgeries. At the same time, however, she believed Nagely had "nothing" to do with USAA's offer to pay the UIM policy limit of $100,000.

The jury was submitted a broad form question asking whether Reynolds "failed to comply with" the contract and was instructed that, if it found she had, it would need to determine whether her failure was excused by Nagely's own failure to comply with the contract or his waiver of Reynolds's compliance. The jury found Reynolds had failed to comply with the contract and found that her breach was not excused. Additionally, the jury found Nagely was entitled to $36,666.66 in damages, representing one third of the $100,000 UIM proceeds and one-third of the PIP proceeds,[3] and $52,000 in attorney's fees.

**2.** Additionally, causation was an issue. The accident occurred as Reynolds was turning left from an intersection into a parking lot. According to Reynolds, she approached the parking lot from the west and moved into the intersection when the traffic light for eastbound/westbound traffic was green and the left-turn yield light was also green. She did not turn, however, until after both lights turned red and she thought all the traffic heading east had stopped. The hit-and-run driver was eastbound and collided with her as he ran the light.

**3.** The jury's award of damages—$3,333—for Nagely's recovery of the PIP benefits was slightly higher than the fee to which he was actually entitled and was based on what appears to be the jury's belief that Nagely had recovered the PIP policy limit of $10,000. As stated, Nagely recovered "only" $9148.76 in PIP proceeds.

Following the denial of several post-judgment motions by Reynolds, the trial court signed a final judgment on the jury's verdict and ordered that Nagely's damages and fees be satisfied from the interpleaded funds, with any remaining funds to be distributed to Reynolds.

## The Interpleader and Declaratory Judgment Actions

In her first issue, Reynolds asserts the trial court erred in failing to sign a judgment and file findings of fact and conclusions of law[4] in the interpleader and declaratory judgment actions. Reynolds maintains "three live claims" existed at the time of trial—the declaratory judgment, the interpleader, and the breach of contract—yet the final judgment only disposed of the breach of contract claim. Additionally, Reynolds maintains that, because the trial court and not the jury determined the interpleader and declaratory judgment actions, she was entitled to findings of fact and conclusions of law. Because the judgment "does not dispose of all the issues" and the court did not file its findings and legal conclusions, Reynolds asserts the appeal should be abated for entry of judgment and findings and conclusions.

■■■ A judgment is final if it disposes of all the issues and parties in the lawsuit, and it is presumed to be final following a conventional trial on the merits—where conflicting evidence is heard. *Childers v. Advanced Found. Repair, L.P.*, 193 S.W.3d 897, 898 (Tex.2006); *John v. Marshall Health Servs.*, 58 S.W.3d 738, 740 (Tex.2001); *Gen. Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 711 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). In the context of an interpleader action, an order granting the action and discharging the interpleader is a final judgment, unless the dispute extends beyond the competing claims to the funds. *See K & S Interests Inc. v. Tex. Am. Bank/Dallas*, 749 S.W.2d 887, 889 (Tex.App.-Dallas 1988, writ denied); *Taliaferro v. Tex. Commerce Bank*, 660 S.W.2d 151, 155 (Tex.App.-Fort Worth 1983, no writ) (op. on reh'g). A party is entitled to findings of fact and conclusions of law following a conventional trial on the merits before the court. *See* TEX.R. CIV. P. 296; *Gen. Elec.*, 230 S.W.3d at 711; *Hoffmann v. Dandurand*, 143 S.W.3d 555, 559 (Tex.App.-Dallas 2004, no pet.).

■■ Applying this law to the facts at hand, we conclude Reynolds's contentions are without merit. At the time the trial court signed its order granting the interpleader action and discharging USAA, Mosser had been dismissed from the suit and the only remaining dispute over the UIM proceeds was the competing claims of Reynolds and Nagely, that is the breach of contract claim and declaratory judgment action. The order disposed of the interpleader action, and because the dispute over the UIM proceeds did not extend beyond the competing claims to the funds, it was final. *See K & S Interests*, 749 S.W.2d at 889; *Taliaferro*, 660 S.W.2d 151 at 155. Additionally, because the court signed the order without hearing evidence, the order did not "follow a conventional trial on the merits" and Reynolds was not entitled to findings of fact and conclusions of law. *See Gen. Elec.*, 230 S.W.3d at 711; *Hoffmann*, 143 S.W.3d at 559. To the extent Reynolds complains the trial court erred in failing to sign a final judgment and file findings and conclusions in the interpleader action, we resolve her first issue against her.

We also resolve Reynolds's first issue against her to the extent she raises the

4.  *See* TEX. RS. CIV. P. 296, 297.

same complaint with respect to the declaratory judgment action. Although the trial court orally denied Nagely's request for declaratory relief prior to the trial on the merits but did not sign a separate order or judgment, it signed a judgment following a conventional trial on the merits. This judgment is presumed final and Reynolds presents nothing to rebut this presumption. *See Marshall,* 58 S.W.3d at 740. Moreover, the judgment specifically provides that it is being rendered on the jury's verdict and denies "all other claims for affirmative relief not specifically addressed" by the jury's verdict. This language disposed of Nagely's declaratory judgment action. And, because the declaratory judgment action was resolved without an evidentiary hearing, Reynolds was not entitled to findings and conclusions. *Gen. Elec.,* 230 S.W.3d at 711; *Hoffmann,* 143 S.W.3d at 559. Reynolds's contention that three live claims existed at trial and the final judgment disposed of only one is without merit.

### Sufficiency of the Evidence

Reynolds's second, third, and fourth issues all challenge the legal sufficiency of the evidence to support the judgment. Specifically, in her second issue, Reynolds challenges the sufficiency of the evidence to support the "judgment that Nagely owns the interpleaded funds." And, in her third and fourth issues, Reynolds challenges the sufficiency of the evidence to support Nagely's breach of contract claim and award of attorney's fees.

■■■ Our question in a legal sufficiency challenge is whether the evidence before the court would allow reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). In making this determination, we view all the evidence in the light most favorable to the verdict and will conclude anything more than a scintilla is legally sufficient. *Keller,* 168 S.W.3d at 827; *Hinkle v. Hinkle,* 223 S.W.3d 773, 778 (Tex.App.-Dallas 2007, no pet.). We will sustain a challenge to the legal sufficiency of the evidence when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively established the opposite of the vital fact. *Volkswagen of Am., Inc. v. Ramirez,* 159 S.W.3d 897, 903 (Tex.2004).

### Breach of Contract

■■ To succeed on his breach of contract claim, Nagely needed to establish (1) the existence of a valid contract, (2) his performance or tendered performance, (3) Reynolds's breach, and (4) damages as a result of the breach. *McGraw v. Brown Realty Co.,* 195 S.W.3d 271, 276 (Tex.App.-Dallas 2006, no pet.). To defeat his claim, Reynolds could show Nagely waived her performance under the contract or failed to perform himself. *See 4901 Main, Inc. v. TAS Automotive, Inc.,* 187 S.W.3d 627, 632 (Tex.App.-Houston [14th Dist.] 2006, no pet.); *Barnett v. Coppell N. Tex. Court, Ltd.,* 123 S.W.3d 804, 815 (Tex.App.-Dallas 2003, pet. denied). Because Nagely was hired on a contingency-fee basis, he could recover as damages the fee to which he would have been entitled had he not been terminated—that is, one third of the insurance proceeds—even though he failed to complete the terms of representation if evidence showed Reynolds discharged him without good cause. *Hoover Slovacek LLP v. Walton,* 206 S.W.3d 557, 561 (Tex. 2006); *Mandell,* 441 S.W.2d at 847.

In arguing in her third issue that the evidence is legally insufficient to support

Nagely's claim, Reynolds does not dispute the validity of the contingent fee contract with Nagely. Accordingly, we need only determine whether legally sufficient evidence shows Nagely performed his obligations under the contract, Reynolds failed to perform her obligations and her failure to perform was not excused, and Nagely suffered damages. In making this determination, we consider the contract in relationship to the PIP proceeds separately from the UIM proceeds.

With respect to the PIP proceeds, Reynolds argues the court erred in awarding damages because Nagely did not plead for such damages and Texas Rule of Civil Procedure 301 requires judgments to conform to the pleadings. *See* TEX.R. CIV. P. 301. Nagely responds that the award was proper because he pleaded for relief based on Reynolds's "refus[al] to pay [him] under the terms of the Fee Agreement" and this was "certainly broad enough to include a claim for one-third of the PIP recovery." *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex.2000) (pleading sufficient if it gives fair and adequate notice of facts upon which party bases his claim). Alternatively, Nagely argues the issue was tried by consent.

■■■ Addressing Nagely's first argument, we note Nagely received the PIP proceeds, deducted the $300 advanced to her for her rent, and paid the balance to Reynolds. Nagely explained that he opted not to collect his fee at the time because of Reynolds's financial situation, and in his pleadings he referenced only the UIM proceeds. Although Nagely argues his plea for relief on Reynolds's "refusal to pay [him] under the terms of the Fee Agreement" encompassed the PIP proceeds, we disagree. Nagely's inaction at the time the PIP proceeds were paid along with his failure to mention them specifically in his pleading refutes Nagely's claim.

■■■ We also conclude the record refutes Nagely's claim that the issue was tried by consent. A party's unpleaded issue may be deemed tried by consent when evidence on that issue is developed under circumstances indicating that the parties understood the issue was "in the case" and the other party fails to make an appropriate complaint. TEX.R. CIV. P. 67; *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 309 (Tex.App.-Dallas 2006, no pet.). To determine whether an issue was tried by consent, the reviewing court must examine the record, not for evidence of the issue, but rather for evidence of *trial* of the issue. *Id.* Here, the record reflects that Nagely was asked by his counsel what relief he was seeking and Nagely replied he was seeking one-third of the $100,000 UIM proceeds and attorney's fees. The following then transpired

Q. How about your 33 and one-third percent interest in the $10,000 PIP payment?

A. No, I'm not going to seek recovery of that.

Q. Are you sure about that?

A. I guess I should ask the jury to award that to me.

Q. Let me ask you this. Did you give that to her as a show of good faith?

A. I did.

Reynolds did not object, but when Nagely's counsel argued at closing that the jury should award Nagely his fee for the PIP proceeds, Reynolds responded that Nagely had not made a demand nor pleaded for that fee. Given the sequence of counsel's questions, we conclude Nagely's less-than-definitive answer when prompted as to whether he was sure he did not want to recover his fee for the PIP proceeds did not put the issue of that fee "in the case." The "earliest" the issue could have come "in the case" was when Nagely's counsel

argued at closing that Nagely was entitled to recover that fee. However, Reynolds properly responded to counsel's argument. We sustain Reynolds's third issue as it pertains to the PIP funds and modify the judgment to delete the award of $3,333.33 associated with those funds.

■■■ With respect to the UIM proceeds, however, we resolve Reynolds's third issue against her. In arguing no evidence exists to support the breach or award of damages with respect to these funds, Reynolds maintains the UIM proceeds have not been recovered and because they have not been recovered, she cannot have failed to pay Nagely, and thus cannot have failed to perform under the contract. In support, Reynolds maintains she "did not accept the settlement offer" and the settlement check was not made payable solely to her. However, the record reflects she refused the UIM proceeds because she did not want to pay Nagely, not because she disputed the amount she was entitled to recover. The record further reflects that the check was not made solely to her because of her obligation under the contract to pay Nagely "out of avails of the recovery." By placing the funds in the registry of the court, USAA was tendering the UIM policy limit. This constitutes sufficient evidence that she recovered insurance proceeds but did not pay Nagely his fee.

■■■ Having concluded the evidence sufficiently established Reynolds failed to perform her obligations under the fee agreement, we turn to whether her failure to perform was excused. Reynolds maintains it was, not because Nagely waived his fee, but because the evidence failed to show Nagely performed his obligations under the contract or that any recovery was a result of Nagely's performance. Reynolds bases this contention on testimony that Nagely did not make a "formal" de-

mand for UIM benefits and that USAA did not offer to settle the claim until twenty months after Nagely's representation ended. The record reflects, however, that the claim adjusters knew Nagely was pursuing such a claim. Additionally, Nagely and Frazier testified they were seeking UIM benefits for Reynolds. Although Reynolds testified she did not believe Nagely had anything to do with USAA's offer to pay the UIM policy limit twenty months after she terminated him, she also testified she believed it could have been resolved during Nagely's period of representation. This evidence is more than a scintilla that Nagely performed his obligation under the contract. Although USAA offered the proceeds twenty months after Reynolds terminated Nagely, the claim adjusters testified the complexity of Reynolds's claim and Reynolds's revocation of her medical release prevented the claim from being resolved before the termination. Additionally, Nagely and Frazier testified they were confident the claim would be resolved favorably and would have pursued it until it was had Nagely not been terminated. This evidence sufficiently shows that any failure of Nagely to further perform was excused by Reynolds's discharging him. Although his discharge must have been without good cause before Nagely could seek recovery of his fee, Reynolds does not dispute on appeal she discharged Nagely without cause.

Because Nagely was hired on a contingency-fee basis and was discharged without cause, we conclude he was entitled to recover as damages the fee to which he would have been entitled had Reynolds not discharged him, that is one-third of the UIM benefits or $33,333.33. *See Hoover Slovacek*, 206 S.W.3d at 561; *Mandell*, 441 S.W.2d at 847.

### Award of Attorney's Fees

In her fourth issue, Reynolds complains the evidence is legally insufficient to sup-

port the award of attorney's fees. Relevant to this issue, the record reflects Nagely called his counsel to testify as to the amount and reasonableness of his fees. Reynolds objected, arguing Nagely had not made a proper demand and had failed to respond to her timely "rule 194" request to provide "notice of the expert that's going to testify and all documents, tangible things, reports, models or data compilations that ha[d] been provided to, reviewed by, or prepared by or for" Nagely's counsel in anticipation of his testimony. *See* TEX.R. CIV. P. 194.2(f). Following Nagely's response that he had filed an amended expert designation that set forth all the requested information and that, other than attorney-client privileged documents, "[a]ll the documents in this case" that the expert had reviewed were documents that Reynolds herself had, the trial court overruled Reynolds's objection.

Arguing Nagely's counsel should not have been allowed to testify because of Nagely's failure to comply with the rules of discovery and disclosure, *see* TEX.R. CIV. P. 193.6, Reynolds asserts no competent evidence exists to support the award of fees and as such, her complaint that the evidence is legally insufficient should be sustained. *See Volkswagen,* 159 S.W.3d at 903. Reynolds also argues her sufficiency complaint should be sustained because Nagely did not properly present his claim to Reynolds as required under chapter 38 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.002 (Vernon 2008).

To be entitled to attorney's fees under chapter 38, Nagely needed to (1) prevail on his breach of contract claim and recover damages; (2) present his breach of contract claim to Reynolds; (3) show he did not receive payment within thirty days of presenting his claim; and (4) show the fees were reasonable and necessary. *Id.*

§§ 38.001, 38.002, 38.003; *Green Int'l v. Solis,* 951 S.W.2d 384, 390 (Tex.1997).

In arguing her sufficiency complaint should be sustained because Nagely did not properly present his claim, Reynolds does not dispute that Nagely presented a claim to Reynolds before suit was filed and did not receive payment within thirty days of his request. Instead, she contends as she did in her legal sufficiency issue that she has yet to recover the UIM proceeds. Because she has failed to recover, Reynolds argues, the demand by Nagely was premature. Having concluded that Reynolds has recovered the UIM proceeds, however, we reject her contention that Nagely's presentment was premature.

We also reject her contention that the testimony of Nagely's counsel should have been excluded. In reaching this conclusion, we have reviewed the trial court's ruling on Reynolds's objection for an abuse of discretion. *See Lopez v. La Madeleine of Tex., Inc.,* 200 S.W.3d 854, 859 (Tex. App.-Dallas 2006, no pet.).

■ In arguing the testimony should have been excluded, Reynolds contends the court's ruling is unsupported by any evidence because the record reflects "Nagely failed to list [his expert] as a trial witness, state the substance of his expert opinion, or produce any documents" or "other tangible information upon which [the expert] relied for his expert opinion." Additionally, Reynolds argues the court's ruling is unsupported by any evidence because the expert testified on cross-examination that in determining the amount of necessary and reasonable fees to request, he reviewed time slips kept in his normal course of business that were not produced pursuant to discovery. Relevant to the latter argument, the record reflects the expert explained that he did not produce the time slips because "a request was not made." The record further reflects that

Reynolds made a side bar comment that "this is exactly why" an objection was made to the expert's testimony, but when asked by the court if she had an objection, she simply continued questioning the expert. Reynolds maintains now in her brief that the expert's response that "a request was never made" contradicts the record. However, to the extent she claims the testimony on the amount of fees being requested should not have been introduced at trial because of failure to produce the time slips, we conclude she has waived any error by not objecting when the testimony arose. *See* TEX.R.APP. P. 33.1.

■ To the extent she complains the expert's testimony should have been excluded because of Nagely's failure to list the expert as a trial witness, state the substance of his expert opinion, or produce any documents upon which the expert relied, we conclude her complaint lacks merit. As stated, Nagely's counsel stated that Nagely had filed an amended disclosure with the requested information, and the record bears this out. In his amended disclosure, Nagely listed his counsel as a testifying expert and provided his contact information. Additionally, Nagely stated that his counsel

> is an attorney licensed in the State of Texas. Although he is still formulating his opinions and may form further and/or supplemental opinions following the depositions of the other parties' alleged expert(s), if any, and/or following the testimony of witnesses at trial, it is anticipated that [counsel] will testify concerning Nagely's attorney's fees and costs in prosecuting this litigation and attorney's fees and costs incurred in defending against any claims, including but not limited to discovery costs, court costs, investigative fees, and other related costs and fees incurred by Nagely in this action. [Counsel] will further testi-

fy to the reasonableness and necessity of any attorney's fees and costs incurred by Nagely in this action and the reasonableness and necessity of any attorney's fees and costs incurred by Nagely in prosecuting Reynolds's claims, including not only the propriety of his representation, but also the impropriety of his termination. [Counsel] will also testify to the reasonableness and necessity of any attorney's fees and costs incurred by the other parties, if necessary, including but not limited to discovery costs, court costs, investigative fees, and other related costs and fees incurred by the other parties in this action.

This disclosure provided Reynolds with the general substance of counsel's anticipated testimony. Additionally, the record reflects Nagely pleaded for attorney's fees from the inception of the suit and designated counsel as a "person [he] intend[ed] to call to testify at trial" in response to a written interrogatory from Reynolds. This record supports a determination that Nagely sufficiently complied with the disclosure rules. Accordingly, we conclude the trial court did not abuse its discretion in overruling Reynolds's objection. *See Brunelle v. TXVT Ltd. P'ship*, 198 S.W.3d 476, 479–80 (Tex.App.-Dallas 2006, no pet.) (concluding trial court not required to exclude witness not expressly identified in discovery responses where, among other factors, separate document identified witness as person with knowledge and witness was placed on defendant's witness list more than six months before trial); *Nw. Nat.'l County Mut. Ins. Co. v. Rodriguez*, 18 S.W.3d 718, 722 (Tex.App.-San Antonio 2000, pet. denied) (concluding attorney's testimony on issue of fees admissible despite party's failure to designate attorney as expert in answer to interrogatories where attorney designated as witness on damages and attorney was only possible witness); *cf. E.F. Hutton & Co. Inc. v.*

*Youngblood,* 741 S.W.2d 363, 364 (Tex. 1987) (disallowing attorney's fees where expert witness on issue not designated in answer to interrogatories). And, because the trial court did not abuse its discretion in overruling Reynolds's objection, counsel's testimony was properly before the court and Reynolds's contention that her legal sufficiency complaint should be sustained on that ground must fail. We resolve Reynolds's fourth issue against her.

### *"Ownership" of Interpleaded Funds*

In her second issue, Reynolds complains the court erred in finding that Nagely "owns" the interpleaded funds. Reynolds argues as she did in her third issue that Nagely was responsible only for the recovery of the PIP proceeds and because he did not seek to recover his fee with respect to those funds, no evidence exists that he "owns" the interpleaded funds. In the alternative, she argues, without any supporting authority, that Nagely "owns" at most the sums representing her fees for the breach of contract claim and not the sum for attorney's fees.[5] Having already resolved against Reynolds her contention that Nagely recovered only the PIP proceeds, we also resolve against Reynolds that complaint to the extent that it pertains to the interpleader funds. And, because Reynolds cites no authority in support of her contention that Nagely cannot recover his fees from the interpleaded funds, we conclude she presents nothing for our review and resolve that complaint against her. *See* Tex.R.App. P. 38.1(h).

### *Mandell & Wright v. Thomas*

In her fifth issue, Reynolds urges the overruling of *Mandell & Wright v. Thom-*

*as,* the 1969 Texas Supreme Court opinion holding that an attorney, discharged without good cause before he has completed his work, may recover on the contract for the amount of his compensation. *See Mandell,* 441 S.W.2d at 847. Recognizing that we have no authority to overrule decisions by the Texas Supreme Court, *see In re K.M.S,* 91 S.W.3d 331 (Tex.2002), Reynolds states she is raising this issue "for the purpose of preservation." As such, nothing is presented for our review and we resolve Reynolds's fifth issue against her.

We modify the trial court's judgment to delete the award of $3,333.33 for damages associated with the PIP proceeds and, as modified, affirm.

---

**5.** In her reply brief, Reynolds argues the trial court should have determined who owns the interpleaded funds prior to disbursing them to Nagely. By entering judgment on the jury's verdict that Reynolds breached the contingent fee contract, the trial court did exactly that.